### ANDREW ARMSTRONG ET AL. V. G. W. O'BRIEN.

#### No. 3182.

1.  Independent Executors—Case Adhered to.—O'Brien v. Armstrong, 79 Texas, 602, adhered to, in holding that independent executors may employ agents to sell lands of the estate and become liable for reasonable commissions out of the funds of the estate.

2.  Evidence—Letters of One Executor Where There Are Two.—Where two executors qualified and were acting, in litigation against them about compensation by an employe about the business of the estate the letters of one of the executors were competent.   Rev. Stats., art. 1937.

3.  Variance.—In the petition in a suit for commissions earned by the plaintiff in obtaining a purchaser for land for defendants it was alleged that plaintiff had effected a sale of lands (described) to one C. Dart.   There being conflict in the testimony as to who was the purchaser, it was error in the court to refuse an instruction, that if the plaintiff had not effected a sale to Dart, but to Lutcher & Moore, to find for the defendants.   The issue should have been submitted to the jury.

4.  Same.—Suit for commissions for making a sale of land.   There was testimony that the contract of agency required sale of three tracts; evidence showed contract to sell but two.   *Held*, that a charge should have been given that the plaintiff could not recover on the contract upon sale of but two of the tracts.

5.  Compromise.—An offer made by way of compromise, expressly to be of no effect unless accepted by all parties interested, can not when rejected be used for any purpose as a contract.   See example.

6.  Principal and Agent.—It is well settled that a person can not act in the capacity of agent for both buyer and seller and receive commissions from both unless he should so act with the full knowledge and consent of both principals.   See example. In this case agents of the land owners contracted with an agent to aid in effecting a sale to certain buyers who were also to pay commissions, or compensation, to the last named agent.   Nor can a person be both seller and buyer, so that an agent to sell can not sell to himself.

APPEAL from Jefferson.   Tried below before Hon. W. H. FORD.
The opinion states the case.

*Greer & Greer*, for appellants.—1.   Where executors are appointed independent of control by the Probate Court, they are trustees holding the property for the benefit of their testator's estate, and they can not delegate their authority in a way that will divest them of controlling or disposing of such property, so that it will be done in a manner detrimental to the interests of their cestui que trusts.   Tippett v. Mize, 30 Texas, 367; Langley v. Harris, 23 Texas, 569; Newton v. Bronson, 13 N. Y., 587; O'Brien v. Gilleland, 79 Texas, 602.

2.   As a general rule, no trustee can delegate his powers unless expressly authorized so to do, and this rule applies with greater force to executors than to others.   2 Laws. Rights, Rem. and Prac., p. 1645, sec. 923, citing Pearson v. Jamison, 1 McLean, 197.

3.   Where two executors are appointed, it requires the joint action of both to bind their testator's estate.   Hart v. Rust, 46 Texas, 556;

McLane v. Belvin, 47 Texas, 493; Burns v. Hill, 2 Ct. App. C. C., sec. 523; McDonald v. Hamblen, 78 Texas, 628.

4.  Under the familiar rule that the allegata and probata must correspond, the sale being alleged to have been made to C. Dart and the proof showing it was made to Lutcher & Moore, the charge was required thereby submitting the variance. Gammage v. Alexander, 14 Texas, 418; Lemmon v. Hanley, 28 Texas, 221; Stewart v. Gordon, 65 Texas, 344; Flores v. Smith, 66 Texas, 115.

5.  Before a land broker can recover commission, he must find a purchaser ready, able, and willing to carry out the purchase on the terms and at the price agreed upon between the owner and the broker. Conkling v. Krakauer, 70 Texas, 735; Burns v. Hill, 2 Ct. App. C. C., sec. 523; 1 Ct. App. C. C., sec. 843; Parker v. Walker, 86 Tenn., 566; Gilchrist v. Clarke, 86 Ind., 583; Buckingham v. Harris, 10 Colo., 455; De Cordova v. Bahn, 74 Texas, 645; Harrell v. Zimpleman, 66 Texas, 293; White v. Templeton, 79 Texas, 454.

6.  It is an undisputed rule of law, that unless with the free and intelligent consent of his principal given after full knowledge of all the facts and circumstances, the agent can not in the same transaction act both for the principal and the adverse party. Potter's Appeal, 7 Am. St. Rep., 272; Same Case, 56 Conn., 1; Keigler v. Savage, 12 Md., 383; Scribner v. Callar, 40 Mich., 375; Raisin v. Clark, 41 Md., 158; Bell v. McConnell, 37 Ohio St., 396; Rice v. Wood, 113 Mass., 133; Lynch v. Fallon, 11 R. I., 311; Everhart v. Searle, 71 Pa. St., 256; Mayer v. Hanchette, 39 Wis., 419; Walker v. Osgood, 98 Mass., 348; Farnsworth v. Heinener, 1 Allen, 498; De Steiger v. Hallington, 78 Mo. App., 382; Miller v. Railway, 83 Ala., 274; Wassal v. Reardon, 11 Ark., 705; Levy v. Loeb, 85 N. Y., 365; Fish v. Lesser, 69 Ill., 394; Byrd v. Hughes, 84 Ill., 174; Ins. Co. v. Ins. Co., 20 Barb., 468; 14 N. Y., 85.

7.  The court erred in refusing to give special charge asked by defendants, that land agents can not act for both the vendor and vendee of the land unless the same is so understood by both purchaser and seller at the time, etc.; in that the same was directly pertinent to and required by the evidence, and no charge of similar import or effect was contained in the general charge of the court. White v. Templeton, 79 Texas, 454; Bell v. McConnell, 37 Ohio St., 396; Scribner v. Callar, 40 Mich., 375; Webb v. Paxton, 36 Minn., 532.

8.  By the contract of agency between plaintiff's firm and defendants, the C. S. Hunt survey was to be included with the other two tracts in Newton County in any sale thereof; and not being so included in the sale of June 1, 1889, the plaintiff has not complied with his contract, and can not recover. De Cordova v. Bahn, 74 Texas, 645; Kirk v. Emerling, 22 How., 73; White v. Templeton, 79 Texas, 454.

*Douglas & Lanier,* for appellee.—1. Independent executors with power to sell have the right and authority under the law to employ land agents for the purpose of selling the lands of the estate they represent, and pay the usual commission therefor. Rev. Stats., art. 1936; O'Brien v. Gilleland, 79 Texas, 602; 1 Perry on Trusts, secs. 404, 409.

2. Where independent executors are authorized by the terms of the will to sell lands, and such executors have fixed for themselves the price they are willing to sell at, they may employ and pay a land agent for his services in finding a purchaser, and pay usual commissions for such service out of the proceeds of such sale; nor would such employment be a delegation of the authority of such executors, no act of judgment or discretion being required of such land agent. Rev. Stats., art. 1936; 1 Perry on Trusts, sec. 409.

3. Where there are two independent executors, either one acting alone can make a contract binding on the estate. And the court did not err in permitting the letters to be read in evidence for that reason; and also because it was impossible for two men to write one letter at the same time, and for plaintiff to prove up the case with two witnesses on the stand at once.

GARRETT, PRESIDING JUDGE, *Section B.*—G. W. O'Brien brought this suit in his own right and as surviving partner of the firm of O'Brien & John, who were lawyers and land agents, against Andrew Armstrong and J. J. F. Gilleland as independent executors of the will of James Armstrong, deceased, to recover commissions for the sale of lands belonging to said estate made in behalf of said executors. Plaintiff averred: That on or about December 21, 1879, James Armstrong, deceased, by his last will and testament, previously made, appointed defendants executors thereof, and provided thereby that they should not be required to give bond, and that no further action should be had in the Probate Court in the settlement of his estate than the probation and registration of his will and the filing of an inventory and appraisement of his estate. That on or about March 15, 1880, said will was duly admitted to probate, and said Andrew Armstrong and J. J. F. Gilleland, defendants, duly qualified as such executors and took control and charge of the estate, which was large, consisting of lands and other property. That it was further provided by said will, that defendants, as executors, were authorized and required to make sale of the said lands and real estate of their testator for cash; and it was also provided, that no tract thereof should be divided or sold in part, but in whole.

And the plaintiff further states, that, "pending the administration by defendants of their said trust as executors, to-wit, on or about January 1, 1887, the defendants, as such executors, brought and delivered to the said firm of O'Brien & John the title papers of all the lands of

said estate, and placed the same, together with said lands, in the hands of said firm, and then and there proposed, contracted, and agreed with said firm of O'Brien & John that the said firm should, for defendants, negotiate and make sales of said lands thereafter, advertising the same for sale at the expense of said firm, and to sell the same as soon as practicable; and without further limitation or reservation as to when they should be sold than that it was requested by defendants that said lands should be sold as early as practicable in whole tracts and for cash, as provided by said will, that they might settle up said estate; the price then being fixed by defendants as to that portion of said lands then known as the Armstrong and Taylor tracts, 5245 acres in Newton County, at $2 per acre. And defendants further contracted with said firm, that said firm should have and receive the usual and customary fees and commissions; that defendants, after the death of said John, recognized and ratified said contract, and continued same with plaintiff, to sell said lands, save that defendants changed the price of said lands to $3 per acre, instead of $2."

Plaintiff then alleges sale of the Armstrong and Taylor surveys to C. Dart, on June 1, 1889, for $15,735, being $3 per acre, and that on June 4, 1889, he notified defendants thereof and demanded of them the execution of the deed therefor to the purchaser. Defendants declined to carry out said sale and execute said deed, unless the purchaser would also take the Charles S. Hunt survey at the same price. Plaintiff then proceeds to allege another sale to Dart, on October 24, 1889, of the same surveys for $17,046.25, and that defendants again failed and refused to carry out said sale.

Defendants answered with a general demurrer, special exceptions, general denial, and a special answer denying the authority of plaintiff to sell and that the land had been sold in accordance with the terms of the executors.

Trial was had May 20, 1891, and the court having overruled the defendants' general demurrer and special exceptions, the case went to a jury, which returned a verdict in favor of the plaintiff for $1704.62, with interest at the rate of 8 per cent per annum for one year, ten months, and twenty days, amounting to $257.59; total $1962.21.

This is the second appeal; the first will be found reported in 79 Texas, 602. By a demurrer to the petition the questions are raised whether the executors had the right to employ an agent to sell the lands of the estate; and if so, whether they could pay his commissions out of the funds belonging to the estate. It was said by Judge Collard in the opinion when this case was before the Supreme Court the first time: "The original petition and trial amendment set up the essential elements of a good cause of action in this character of suit—good, at least, upon general demurrer. The power of the executors to sell the land of the estate, and hence to make the contract with agents to

sell, is not alleged as a distinct proposition, but we think with sufficient definiteness to be good on general demurrer." 79 Texas, 604. This virtually disposes of the questions. There does not appear to be any delegation of the power of the executors to sell the land; but only an employment of the plaintiff as an agent to procure a purchaser at a price fixed by them; and the executors would be allowed all reasonable expenses necessarily incurred by them in the preservation, safe-keeping, and management of the estate, and all reasonable attorney fees that may be necessarily incurred by them in the course of the administration. Rev. Stats., art. 1936; 1 Perry on Trusts, secs. 404, 409.

On the trial plaintiff was permitted to read in evidence the various letters written by the defendant J. J. F. Gilleland, one of the executors, to the plaintiff and C. Dart and plaintiff's firm, O'Brien & John. Defendants objected, that said letters were not written jointly, and could not bind the estate of Armstrong; and the action of the court in admitting them was calculated to impress the jury with the idea that Gilleland, individually, could bind the estate without his co-executor. Article 1936, Revised Statutes, provides: "Should there be more than one executor or administrator of the same estate at the same time, the acts of one of them as such executor or administrator shall be as valid as if all had acted jointly." But this provision, however, does not apply to the conveyance of real estate in which all who are acting must join. Art. 1937. The statute meets the objection that they were not written jointly. We think the letters were admissible also on the general principles of evidence as the admissions of a party made affecting the matter under investigation.

Appellants requested the court to give the jury the following special instruction, which was refused: "The plaintiff having alleged in his petition that he, in pursuance with a contract made between the firm of O'Brien & John and defendants, sold the land therein described to one C. Dart, I charge you that if you find from the evidence that plaintiff, in pursuance of such contract, if you find there was one, did sell said lands, but that such sale was made to Lutcher & Moore, and not to C. Dart, you will find for defendants."

The refusal of the court to give this instruction is assigned as error because the fact of the sale to Dart was a material and direct issue in the case as made by the pleadings and the evidence, which showed such sale was made to Lutcher & Moore, but on a credit, in violation of the will.

It was shown by the evidence that Gilleland and Armstrong, as executors of James Armstrong, deceased, during the month of January, 1887, employed the firm of O'Brien & John, who were lawyers and land agents, to attend to the business of the estate, take charge of all matters, sell out the lands, and settle up the estate. There was no contract

as to fees, but O'Brien & John were to have the usual fees. The papers were turned over to them, and the conditions of the sale were discussed, the will having provided that the land should be sold for cash and in whole tracts. Ten per cent was the usual and customary amount of commissions paid for the sale of lands. Among the lands to be sold were the James Armstrong headright, one league and labor; the Joseph W. Taylor 640 and the C. S. Hunt 369 acres surveys. After the death of John, which occurred in February, 1889, the employment continued with the plaintiff. A price was fixed on the lands by the executors, and the sales were to be made in accordance with the terms of the will.

August 15, 1888, C. Dart wrote to A. S. John that correspondents wanted 200,000 acres of pine land, and inquired if he had any for sale, requesting plots of 10,000 to 20,000 acres for samples and statement as to location near stream or railway, how many feet of lumber per acre, and the lowest price to him. John replied August 22, 1888, stating that he had for sale one league and labor, and a 640-acre tract in Newton County, price $3 per acre, which was the price the executors had fixed on the land. August 29, 1888, Dart wrote for further information, and requested an option of sixty days on the land, stating that he could not guarantee a sale, but if he should try and work up a sale he wished to know positively what he could do. He obtained the price net to him at $3, and placed the lands to purchasers from him at $3.25 per acre, the 25 cents being intended for his commissions, and he expected O'Brien and John to get a commission from the sellers. He stated in a letter to O'Brien and John, dated December 31, 1888, in reply to theirs of December 19, 1888, asking, "What commission will you charge for these lands if sold by you and what division of commission if any will you make with us," that "in receiving lands for sale I have had it understood that if sold the parties will receive their price net, I adding 25 cents per acre to the price as my commission, which is paid by the buyer. If you should want to make a different arrangement please advise me."

October 5, 1888, O'Brien & John wrote to Dart in their firm name, the letter having been written by O'Brien, giving information as to the land, and stating also, "there is another tract lower down in Newton County (all front on the Sabine River) of which Mr. John did not inform you, belonging to the same (James Armstrong) estate, which the executors are desirous of selling in the same lot for the same price—$3 per acre." Dart had a schedule of the lands made, which he had printed, advertising all the lands held by him for sale, including the Newton County tracts belonging to the Armstrong estate. He continued his endeavors to sell, and at length offered the league and labor and the 640-acre tract to Lutcher & Moore, of Orange, at $3.25 per acre. On May 31, 1889, they wrote to him agreeing to buy the lands at the price named, but stated that they would pay one-half cash, one-fourth in four months, and the balance in eight months. Dart replied June 1,

1889: "Your favor of May 31 is at hand. The land mentioned, the James Armstrong league and the Joseph Taylor 640 acres which lies adjoining, belongs to an estate, and the owners are precluded from selling except for cash; but this can be avoided by making the deed to me for cash and I to you. I would have to discount your notes in order to get the money to pay for the land, and to make the notes desirable I think they should bear 8 per cent interest from date. I have written to-day advising that I have sold the land and suggested this mode of doing the business. If you would care to discount your own notes at the rate, perhaps this would be the better way. The will authorizes the executors to sell without interposition of court. I will write you as soon as I hear from the parties."

He telegraphed O'Brien: "Have sold Armstrong league and Taylor six forty at price agreed upon. Letter by mail." He also wrote on the same day to O'Brien: "I have sold the James Armstrong league and Joseph Taylor 640 adjoining for $3.25, being $3 per acre your price and 25 cents per acre my commissions. The parties, however, only offer to pay one-half cash, one-fourth in four months, and balance in eight months. As the will precludes anything except a cash transaction, the deed had better be made to me at $3 per acre cash, and I will make the deed to purchasers upon their own terms. I can discount the notes, thus realizing all cash to the estate. My commissions will aggregate $1311.25. I am willing to share commissions with you equally, or each may retain his own commissions. If you share in my commissions, the deed should be made to us jointly, and we convey to the purchasers. Let me know when you have the deed ready; the parties desire the deed and title papers sent to First National Bank, Houston, for inspection. Please let me hear from you as early as possible." He added a postscript: "I would suggest, that in the event we share commissions that you get as large an allowance for commissions to you as possible, as the amount of the discount of the notes will have to be deducted from the commissions. I have suggested to the parties, that if they cared to discount their own notes at the legal rate, perhaps it would be the better way. If this is done in this way, my commissions would be reduced about $340."

On June 3, 1889, O'Brien wrote to Gilleland: "You will remember that you authorized the firm of O'Brien & John to sell the Armstrong estate lands, that is, the 5245 acres, including the Armstrong league and labor and the Taylor 640 acres, in Newton County, for $3 cash per acre. Mr. John thereupon made arrangements with C. Dart, a land agent of Galveston, to sell to net us the price, and he has negotiated the sale and desires a deed executed and sent to him. The gross sale to him will be $15,735, and, if you remember, yours and Andrew Armstrong's proposition was to allow us a commission, I think, of 10 per cent on sales. If this be correct it will leave to the estate, estimated,.

$14,161, and give us $1573.50. Dart wants the deed made out and sent to bank, when he will pay the money and the deed be delivered. His sale is not all cash, as the will requires, but he will make his vendees pay his commission, wait on the deferred payments himself, and advance the money to make it a cash sale to us. I suppose the deed will have to be signed and the sale approved by Andrew. So please let me hear from you at once, and as decisively as possible. I will write by this mail to Mr. Andrew Armstrong."

The reply of Gilleland to O'Brien is not in the statement of facts, but it will be gathered from O'Brien's letter to him dated June 7, that he claimed that the executors were to pay 10 per cent only in case of sale at $4 per acre, and that they had advanced the price before the sale to $3.50. O'Brien contended in this letter, that the sale had been made with the authority of the executors at the price fixed by them, and they had agreed to pay the usual commissions, and he thought 10 per cent on sales; and concludes by asking, "If you conclude to make this sale, what commissions would you be willing to pay us?" He wrote to Dart on the same day, inclosing Gilleland's letter, and stating that he had not heard from Armstrong. In this letter he said: "Please state in reply your agreement with Mr. John. The executor, G., seems to be inclined to go back on the whole thing. We had under oral authority of the executors these lands and others in hand for sale sometime before you were engaged, as stated to G. in my letter, to which this is the reply. My recollection is pretty clear that they were to allow us 10 per cent on amount of proceeds and the price was fixed by them at $3 per acre. I will advise you when the best terms are reached. I feel that they should pay our commissions whether they approve sale or not, and shall try to hold them to it by law if necessary. I am willing to divide what we can make of it equally." In a postscript he added: "I have written again to G. to-day, telling him he will owe us the commissions whether he accepts or not."

June 8, Dart wrote to Lutcher & Moore that he had not heard from his correspondents with regard to the land, and informed them that he had received the land from Mr. John, of the firm of O'Brien & John, attorneys of Beaumont; that he had not been advised that there had been any change in the status, or that his authority to sell had been revoked, but from what he knew of Mr. O'Brien by reputation he thought if the land had been already sold or withdrawn from sale, he would so state in reply to his letter; and that his option in the land was not for any stated period. On June 10, he replied to O'Brien's of the 8th of June, returning Gilleland's letter, and said: "My agreement with Mr. John and with your firm was, that I was to offer the lands at $3.25 per acre, $3.00 being your price and 25 cents per acre as my commissions. *The terms upon which I received offers of lands were distinctly stated as acquiesced in.* The question of a division of commissions was never

settled, but I always considered the matter open for agreement.  I have incurred heavy expense in placing this, in advertising, printing, maps, etc., including $20 paid the Commissioner of the General Land Office for a map of Newton County, maps of that county not being lithographed, all of which must be considered.  Messrs. Lutcher & Moore are the proposed purchasers of the land.  I send you a copy of this [their] letter accepting the offer I made them of the land.  The executors must confirm this sale made upon their own terms and without any notice of any change in price.  Your suggestion to divide commissions equally is satisfactory."

In a letter to Lutcher & Moore of the same date he said:  "Mr. J. J. F. Gilleland, of Sabine Pass, one of the executors, has been heard from. He writes that he had advanced the price to $3.50 per acre, net cash, and is now negotiating a sale of the land with two parties at that price. The other executor, at Cotulla, has not yet been heard from.  Mr. O'Brien will hold them to the sale by all legal means.  I will advise you promptly upon hearing from Mr. O'Brien what has been done."

Gilleland wrote to O'Brien on June 13, "As soon as I get a reply to my letter to Andrew Armstrong I will write you."  It seems that Gilleland also objected to the sale, that the Hunt survey had not been included in it.  O'Brien went to Orange to confer with Lutcher & Moore to get them to include the Hunt survey in the sale, and on his return he wrote to Dart, June 24:  "I saw Lutcher & Moore Saturday.  They, because not advised as to the quantity and value of the Hunt survey, declined to include it; but said they would investigate, and if it suited their purposes would make an offer of what they considered it worth. I have written to Gilleland, advising him of this and urging him to carry out the sale made and pay me 5 per cent.  When I hear from him I will post you."  His letter to Gilleland on the same date:  "Communication has been had by Mr. Dart with the parties with whom he bargained for the Armstrong and Taylor surveys.  * * *  However much it is to be regretted that the Hunt is not in the sale, I think it is better to go on with the sale as made.  Indeed, from my standpoint, I do not see how we can honorably, or perhaps legally, do otherwise.  We have your letter authorizing us to make the sale at $3.  Mr. Dart has ours, and had made or negotiated a sale on our letters to same effect. His negotiations were also in writing.  Now, as a question of law, can not the purchasers enforce the performance of the contract?  If not, could they not, if damaged, recover damages for failure on part of executors to carry out their contract?  Dart expressed himself to me that he would consider our failure to carry out the agreement after he had made the sale as bad treatment, even though he was satisfied as to commissions, as it would force him into the appearance of bad faith with the parties to whom he had agreed to sell.  And, Doctor, I desire you to say to Andrew, that I want for Mr. John's estate and myself 5 per

cent at least for this sale.    I think, upon mature reflection, it is as little as I should offer to take under the circumstances.    Andrew speaks of an appreciation in the price of these lands and failure (at $2.85 per acre) to get the benefit of it.    If he will reflect a moment he will remember, I think, that he could not have gotten $2 per acre for them when they were first put in our hands.    We and Dart have advertised them; and if they were in fact so much appreciated, why could we not get much more for them?    A drawback, too, to the sale of these lands is, that all the purchase money must be paid in cash.    That, of course, you can not help.    Please write me at once, if you can, and say whether I shall get up necessary deeds, titles, etc."    *  *  *    Postscript:    "Ten per cent is the usual percentage paid by sellers for sale of lands in Texas."

Dr. Gilleland replied, June 26: "I regret that Mr. Dart is not willing to include the 369 acres tract in the trade, as that was our agreement; and if Mr. John neglected to include it with the other lands in this trade, you can not blame the executors for not complying with the trade as agreed upon, as that is about all that is splitting us.    Our reason for including the Hunt land was to make the other lands sell it, as we believe it probably was not as good land as the rest.    As soon as I hear from Mr. Armstrong I will write you."    And on July 3 he wrote: "I have just received a letter from Andrew Armstrong, in which he says he is willing to let the land go at $3 per acre if Mr. Dart will take all the Newton County lands, but he said nothing about the commission.   I expect a letter from him in a day or two."

Further correspondence and delay resulted, and the executors would only consent to the sale in case the Hunt survey should be included at the same price.    Finally, on October 24, 1889, after Dart and the plaintiff had visited Gilleland and had a personal interview with him, in which a compromise was discussed, the plaintiff wrote to Gilleland as follows:

"The basis of compromise which you said you would give your assent to and submit with your approval to Mr. Armstrong is accepted; that is to say, that the executors have $3.25 per acre for 4605 acres of the J. Armstrong survey and 640 acres of the Joseph W. Taylor survey, and $2.50 per acre for the Charles S. Hunt survey, less our commission of 10 per cent (to Dart and our firm) on the gross sum realized in cash; this proposition to be submitted to Mr. Armstrong, accepted or rejected without delay, and to have no binding effect on any of the parties unless so accepted.    We will state that Lutcher & Moore could not be induced to do more than pay $1 per acre for the 369 acres Hunt survey, and to accomplish this compromise we will have to lose on it $1.50 per acre, or $553.50 of our 10 per cent commission.    Please let us hear from you as soon as possible.    Had you not better request Mr. Armstrong, in the event he approves your action or view of the matter, to come over at once and conclude the transaction?"

This compromise sale to Lutcher & Moore was to be for cash. Armstrong, when advised of it, requested time to consider it; stated that the heirs were now of age and he desired to consult them; and the matter was delayed until finally, on February 10, 1890, the executors sold the land, including the Hunt survey, to other parties for $24,000 in cash, being at the rate of about $4.27 per acre.

Both O'Brien and Dart testified at some length, but the substance of the testimony appears in the foregoing letters. O'Brien said: "As the agent of Gilleland and Armstrong, executors of the will of James Armstrong, I made the sale of this land to Mr. Dart at $3 per acre, cash. I sold the Taylor and Armstrong surveys at $3 per acre, cash. They objected to the sale because I did not include the Hunt survey in the same sale at the same price. * * * I was selling to Dart, and Dart was selling to Lutcher & Moore. Mr. Dart was going to pay the $3 cash. Afterward Mr. Dart was to pay $3.25 for the Armstrong and Taylor tracts, and $2.50 for the Hunt. * * * They [executors] wanted me to take charge of all the lands and, as they were directed by the will, to sell them. I do not remember that there was any specific agreement about commissions. * * * They told me they wanted me to take charge of these matters and sell the lands in order that they might close the estate up. The will required them to sell the land and divide the money. Of course I understood our agency to be exclusive, from the fact that they said they wanted to be relieved of it. * * * When Dart advertised these lands he was acting as a would-be purchaser of the land if he could make a sale himself. I understood Mr. Dart had an option on the land. He got it from Mr. John. I understood he got the price of the land to himself—the price he could get the land at. I did not understand anything about it at the time, but I understand now, that Mr. Dart was to ascertain the price he could get the lands for and then was to sell them himself to others. I understand he was to get 25 cents per acre on the sale. * * * It was a credit sale between Dart and Lutcher & Moore. There was never any sale by me to Mr. Dart until after Lutcher & Moore agreed to buy from Mr. Dart, and Dart agreed to pay cash. Before that it was half cash, and we could not make such sale under the will. I understood by Mr. Dart's letter, that he had sold the land to Lutcher & Moore for $3.25 and he was to pay us $3. The deed was to be made to Mr. Dart, and he was to make a deed to Lutcher & Moore for half cash and then use their notes to raise the balance of the cash to pay the executors at $3. I notified the executors, I think, first, that I had sold the land to Dart. I think I wrote them that. I did not keep a copy of my letter, and I have not seen it since. I explained the whole matter to them subsequently."

On August 1, 1889, O'Brien wrote to Gilleland: "I have not yet heard whether the purchasers, who are Lutcher & Moore, will take

the Hunt tract." He testified as to this letter: "I meant Lutcher & Moore were the purchasers from Dart, and I so informed the execu‐ tors. * * * Mr. Dart was corresponding with them to know if they would take it" [the Hunt survey]. C. Dart, in addition to other matters, testified: "I did not charge any commission to the estate. I was charging 25 cents per acre to the purchaser. * * * I did not propose to buy the lands myself as an individual, but to get a pur‐ chaser, and if I could take them myself I would do it. I would be the legal purchaser in taking the lands, but I would convey to Lutcher & Moore and get the money from Lutcher & Moore to pay for them, and by discounting their notes. If Lutcher & Moore had not said they would take the lands I would not have taken them. I expected to get the money from Lutcher & Moore. The deed was to be made to me, and I was to convey to them."

Andrew Armstrong, one of the defendants, among other things, testified: "I saw C. Dart sometime in January, 1890. He came to my place. He did not say anything about making him a deed; he said something about making a deed to Lutcher & Moore. He said he had not bought the land—it was for Lutcher & Moore. He stated the terms of the sale, and I told him I would not approve of it."

J. J. F. Gilleland, one of the defendants, among other things, testi‐ fied: "I was never notified by Captain O'Brien that he had sold these lands to C. Dart. He never made a deed to C. Dart and tendered it to us to be executed. He and Mr. Dart came to see me. Mr. Dart was selling the land to Lutcher & Moore for Captain O'Brien. I learned through Captain O'Brien who the purchasers were sometime in 1889. [Counsel shows witness a letter.] I think this is the first time I knew who the purchasers were. He may have told me personally before, but this is the first time I remember of. This letter is dated August 1, 1889."

The plaintiff had alleged in his petition that he had sold the lands to C. Dart. It is a familiar rule of pleading that the allegata and pro‐ bata must correspond; and unless it can be said from the testimony that a sale of the land to Dart was so clearly shown as not to leave it an issue in the case, the requested instruction should have been given. This was not the case. The issue should have been submitted to the jury. And the charge should have been given also, for the reason that if the sale was made to Lutcher & Moore and not to Dart, it was a sale on a credit and consequently not such a sale as was required by the will of Armstrong; and Lutcher & Moore were not purchasers ready and willing to comply with the terms as made by the executors, so that the executors would be bound for commissions.

In this connection also will be considered the refusal of the court to give the special instruction requested by the defendants, as shown by the eighth assignment of error, to the effect, that if the jury should find

from the evidence that there was a contract making plaintiff's firm
or plaintiff the agent of defendants for the sale of the land as execu-
tors, and if they should believe from the evidence that such sale was
to include the C. S. Hunt survey, then, even though they should be-
lieve plaintiff did actually make sale of the Armstrong league and
Taylor 640 acres, but did not include the Hunt, they should find for
the defendants.   This was the main reason alleged by the executors
for not approving and carrying out the sale, and it is to some extent
at least supported by the letter of O'Brien & John to Dart calling his
attention to the Hunt survey and explaining that Mr. John had omit-
ted to include it in the list furnished by him.   There was sufficient evi-
dence before the jury to render the refusal to give this instruction
error also.

We think that the evidence was fully sufficient to support the finding
of the jury, that the contractual relation existing between the defend-
ants and O'Brien & John continued to exist after the dissolution of the
firm by the death of A. S. John.   O'Brien testified, that there was no
objection to his agency, and that the matter went along after John's
death as it had done before.   The letters of Gilleland also tended
strongly to show that the agency was afterward ratified.

If there was any sale at all in accordance with the terms of the will
and of the executors as made to O'Brien & John, by which the execu-
tors should be bound for commissions, it was what is called in the testi-
mony the first sale, which was of the two tracts—the league and labor
and 640 acres survey.   The one claimed to have been made in October,
when Lutcher & Moore agreed to pay the $3.25 per acre cash for the
Amstrong and Taylor tracts, and to take the Hunt at $1 per acre, and
O'Brien and Dart agreed to make up out of their commissions, which
were to be 10 per cent on the entire amount of the sale, a sum sufficient
to make the price of the Hunt $2.50 to the executors, was but a proposed
compromise submitted, to be ratified by both of the executors, after they
had contended that the Hunt should be included and had claimed to
have advanced the price on the lands.   It is true that Gilleland wrote
sometime prior that the inclusion of the Hunt was about all "that is
splitting us," but this seems to have been done after his claim that the
executors had advanced the price to $3.50.   The submission of the com-
promise was made expressly with the provision, that if not ratified by
Armstrong it should not be binding on any of the parties.   So Arm-
strong having failed to ratify the proposition, it was not binding as a
sale; nor did Dart or Lutcher & Moore, after its rejection by Arm-
strong, stand in the attitude of purchasers ready and willing to com-
ply with the terms of the sale made by the executors; because by the
terms of the proposition the offer of Lutcher & Moore to pay cash and
take the Hunt at $1 per acre was withdrawn, and Dart was never to be
considered a purchaser until he could find a purchaser from himself.

The verdict of the jury is based upon amount to be realized from the proposed compromise, treating it as a sale. This was clearly wrong, and is excessive at least to the extent of the difference between that amount and the commission at the same rate, 10 per cent, on the first sale. It was also excessive as based on the proposed compromise, because the difference that O'Brien and Dart were to make up out of their commissions for deficiency in price of the Hunt survey should have been deducted.

It is urged by the appellants, that "the verdict of the jury is against the evidence and contrary thereto, in that there was no sale made to Dart, but said sale, if any, was made to Lutcher & Moore." As the judgment must be reversed for other errors pointed out, we will refrain from discussing the evidence on this point. We have already held that the issue should have been submitted to the jury by an appropriate instruction. To what extent the evidence should go to enable the court to say that there was a sale to Dart, we express no opinion, further than that the issue might be a mixed question of law and of fact.

The sixth and seventh assignments of error are as follows:

"6. The court erred in refusing to give special charge number 2 asked by defendants, to the effect that if plaintiff, acting with Dart, sold said lands to Lutcher & Moore, under an agreement between plaintiff and Dart to divide commissions, and were to charge Lutcher & Moore 25 cents per acre therefor, they (plaintiff and Dart) were thereby the agents of Lutcher & Moore, and not of defendants, and the jury so believing would find for defendants; in that (1) there was no charge of similar import contained in the general charge of the court; and (2) that the evidence and correspondence of Dart and plaintiff showed the facts called for in said charge to exist—that is, that plaintiff and Dart were acting together in effecting a sale of the lands to Lutcher & Moore, on June 1, 1889, at $3.25 per acre, but that defendants were to receive only $3 per acre, the other 25 cents per acre going to Dart, to be divided between him and plaintiff.

"7. The court erred in refusing to give special charge number 3 asked by defendants, to the effect that land agents can not act for both the vendor and vendee of the land, unless the same is so understood by both purchaser and seller at the time, etc., in that the same was directly pertinent to and required by the evidence, and no charge of similar import or effect was contained in the general charge of the court."

It is well settled that a person can not act in the capacity of agent for both the buyer and seller, and receive commissions from both; and from principles of public policy such an agent would not be allowed to recover compensation from either party, unless he should so act with the full knowledge and consent of both principals; and about this ex-

ception there is a conflict of authority. It makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith. Mech. on Agency, secs. 798, 67, 643, 644. The case of Chase v. Veale & Co., decided at this term (ante, p. 333), was only to the effect that an agent might give a part of his commissions to the purchaser. This would not conflict with his duty to his principal, but would have the tendency to procure a purchaser for him at the best price. There was evidence tending to show that Dart was acting for O'Brien and John in assisting them to obtain a purchaser for the land, and that there was an agreement between them to divide commissions, which were to be collected both from the executors, who were the sellers, and from Lutcher & Moore, who were the buyers, and the charges requested should have been given. Walker v. Osgood, 98 Mass., 348. It would not be necessary that Lutcher & Moore should know that they were paying a commission for the purchase, if it was in fact added to the price fixed on the lands by the executors, to be shared in by the agents who were effecting the sale. Nor can a person be both party and agent, and it would be inconsistent with O'Brien's duties to his principals to sell the lands to himself and Dart, or to Dart alone, if Dart was acting in the capacity of agent with O'Brien, and to resell them to Lutcher & Moore for a profit or commission.

On defendant's exception that the plaintiff's amended original petition set up a new cause of action, the court taxed all the costs of the District Court up to that time against the plaintiff, but refused to tax against him the costs of the Supreme Court on former appeal, which was decided against the defendants. Defendants were cast in that appeal and it would not be proper to tax the costs of it against the plaintiff in any subsequent proceeding in the suit.

The court should have sustained the defendants' exception, and stricken out the exhibit to the plaintiff's petition; but it failed to do so, and there was no injury done of which the defendants can complain.

The judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*