JINES et al. v. ASTLE et al. (No. 649.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 19, 1914. On Motion for Rehearing, Nov. 28, 1914.)

1. PRINCIPAL AND AGENT (§ 6*) — ACTS OF AGENT—INCONSISTENT EMPLOYMENT.

A person may not take on himself the character of an agent, where on account of his relations with others, or on account of his own personal interest, he would be compelled to assume incompatible and inconsistent duties and obligations.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 15; Dec. Dig. § 6.*]

2. BROKERS (§ 102*) — DOUBLE AGENCY — FRAUD—PURCHASER'S RIGHTS.

Where a purchaser of certain land, knowing that certain brokers represented the owner, was willing to pay $7,040 for the land, but induced the brokers, for a commission to be paid by him, to agree to submit a cash offer of $5,000, taking from them a contract to purchase the land at the higher price, to hold it if the owner would not sell for $5,000, stipulating that the brokers should conceal the higher offer, but they instead procured the owner to sell the land to another for $5,000, purchasing in the brokers' interest, who thereupon completed the purchaser's contract securing a conveyance direct from the owner to the latter at the higher price, the purchaser became a party to the brokers' fraud, and hence could not recover the difference against them.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 146; Dec. Dig. § 102.*]

3. TRIAL (§ 25*)—RIGHT TO OPEN AND CLOSE —DENIAL.

Plaintiffs sued on certain notes, alleging that the same had been legally transferred to them, and by supplemental petition made a similar allegation as to the transfer. Defendants, by supplemental answer, alleged that the transfer pleaded did not refer to or transfer the notes in suit as described in plaintiffs' original petition, which pleading was sworn to. Held, that the specific denial of the fact alleged in the supplemental petition, and which was a part of plaintiffs' cause of action, placed on plaintiffs the burden of proving the transfer, and hence defendants were not entitled to open and close on the ground that plaintiffs' cause of action had been admitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 44–75; Dec. Dig. § 25.*]

4. EVIDENCE (§ 471*) — OPINIONS — CONCLUSIONS.

While a defendant was entitled to testify as to his condition of health as a justification for failure to personally attend the trial, an answer, "My health is in a precarious condition, and I probably could not attend the trial," was objectionable as a conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

5. BILLS AND NOTES (§ 299*) — BLANK INDORSEMENT — FAILURE TO SUE AT FIRST TERM.

Failure to sue a blank indorser of notes in controversy at the first or second term of court relieved him from liability, in the absence of any allegation of a justification therefor.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 680–705; Dec. Dig. § 299.*]

Appeal from District Court, Ochiltree County; F. P. Greever, Judge.

Action by A. M. Jines and another against William Astle and others. Judgment for defendant Astle for cancellation of the note sued on and for certain damages, and plaintiffs appeal. Reversed and remanded in part, with directions, and affirmed in part.

N. P. Willis, of Canadian, and J. W. Payne, of Ochiltree, for appellants. Crudgington & Works, of Amarillo, and R. T. Correll, of Ochiltree, for appellees.

HENDRICKS, J. Appropriate to an understanding and a decision of the issues in this cause, we think it is only necessary to state that A. M. Jines sued Wm. Astle and Charles Orr on a vendor's lien promissory note, for the principal sum of $510, and to foreclose the lien on a half section of land situated in Ochiltree county, Tex. Stated briefly, the ownership of this note became ostensibly vested in Jines as the result of a conveyance of the said half section by Cleal to Astle, for which, as a part of the consideration, said Astle executed and delivered the note to Cleal; the latter transferring the same to the defendant, Charles Orr, by written assignment, who in turn transferred said note to plaintiff Jines. Cleal, who resided in Iowa, was the owner of the half section, and F. C. Spencer was a tenant on the land, and, prior to the sale of the land from Cleal to Astle, there was correspondence between Spencer, the tenant, and Cleal, the owner, for the purpose of effectuating a sale of the property to some third party. As a result of the preliminary negotiations between Spencer and Cleal, Spencer had certain negotiations with his brother-in-law, Orr, for the purpose of selling Cleal's land to Orr, Orr executing a $500 check (in whose favor it is not definitely stated), and claimed in this record to have been a prospective purchaser of said property, but, as the evidence discloses, without any written enforceable contract for the purchase of the land, and without the financial ability to consummate the deal upon the terms made by Cleal to Spencer for the sale of the land. After this check had been executed by Orr, also claimed in this record by Jines and F. C. Spencer to have been a forfeit, Spencer enlisted Jines as a real estate agent for the purpose of selling the land at a sum over $5,000 (the excess to be divided between them), which was the amount it is claimed Orr agreed to pay for the land. The defendant Astle, by cross-action, made F. C. Spencer a party to the suit, alleging that Jines, in exhibiting the land, and offering to sell the same to him, represented that the owner's price for

the property was $22 per acre bonus (over the amount of 97½ cents per acre, due the state), or a total consideration of $7,040, and that it was agreed that Jines would submit a cash offer of $5,000 for the land, which if accepted by the owner, the defendant would pay to Jines a commission of 5 per cent. as a reasonable commission for his services, further alleging that if the owner of the land should not accept the offer of $5,000 rather than lose the land, he agreed to pay the $22 per acre bonus above the 97½ cents per acre due the state. Appellee Astle also asserts that during the negotiations Jines called to his assistance F. C. Spencer, the tenant, who was living upon the land, as the desirable person to submit the $5,000 offer, and alleges that Jines and Spencer did not submit the cash offer and fraudulently concealed from him the fact that the owner, Cleal, would accept that amount of money for said property, but instead submitted to the owner, Cleal, an offer in the name of Orr only of $5,000, on terms of one-half cash and the balance in three and five years, representing to Cleal, the owner, that Orr was the purchaser; that, pending the execution of title papers, Jines and Spencer stated to Cleal that Orr had sold the land to this defendant, requesting Cleal to make a deed direct to Astle; they further representing to Cleal that the difference of $2,040 was Orr's profit in the deal.

The record discloses that not until after Astle had agreed to take the land did Spencer communicate to Cleal anything in regard to the previous negotiations with Orr relative to the latter's intended purchase of the property; also that, at the time Astle finally agreed to take the land, the defendant, F. C. Spencer, with Jines participating in the transaction, in assisting the trade, executed a written contract, ostensibly obligating himself individually to sell the land to Astle for the sum of $7,040, terms to be agreed upon, Astle placing the sum of $500 with the State Bank of Ochiltree, the agent in escrow, as a forfeit on the trade. Immediately following the execution of this contract, Spencer wrote Cleal in Iowa that the land was sold to Orr, with the claim in this record that Orr had first purchased the land, but had sold it in the meantime to Astle, and contending that the difference between $5,000 and $7,040 was a legitimate profit, denying that either had ever agreed to submit an offer of $5,000 to the owner of the land as the agent of Astle. If they agreed to submit Astle's offer of $5,000 cash, knowing Cleal's price upon the land, it was a fraud upon Astle; and if they were the agents of Cleal, and Spencer, knowing Cleal would accept such an offer, and failed to submit such an offer, it was equally a fraud upon the latter.

Astle recovered a verdict and judgment, canceling the $510 note, and recovered the cash received by Jines and Spencer over the amount in cash received by Cleal.

Astle rather vigorously contends that Jines and Spencer defrauded the owner, whoever he was, when they say:

"Appellants cannot escape the proposition that they assumed a false and untrue position in their relations to the owner of the land in controversy, regardless of whether Cleal or Orr was the owner. If Cleal owned the land, appellants were untrue to him, in that they were authorized by him to sell for $5,000 on terms or $4,800 all cash, while Astle offered $5,000 cash, which they did not submit, but, on the other hand, undertook by claiming to have sold the property to Orr, and that he had resold at a profit of $2,040, to secure deed from Cleal without explaining the real situation to him. * * * So these appellants are cut off by their own crookedness from any real rights of protection in law, equity, or morals. How does this line of conduct in regard to the owner of said land, whoever that was, look when placed along beside the rule that requires of an agent the utmost loyalty and perfect good faith in dealing with his principal? Their every act in connection with this land is branded with the marks of fraud and deception."

As asserted by Astle in other portions of his brief, we concur that Spencer and Jines were the agents of Cleal of Iowa, the owner of the land, in the sense that Spencer owed Cleal an independent duty of making a disclosure of all facts with reference to the transaction. Spencer's agency of Cleal is clearly an undisputed issue in this case; and if, as Astle contends, Jines and Spencer were Astle's agents, for the purpose of submitting the $5,000 offer, then it follows that if they were the agents of the owner, and Astle was sufficiently apprised of that fact, he was seeking to obtain benefits under an agreement he alleges he made with them in attempting to obtain the submission of said $5,000 offer, which in the event of rejection the proposition of $7,040 would stand. If he knew, or had knowledge of circumstances sufficient to apprise him of agency for the owner, Astle's agreement with another man's agent, to submit a less offer than he in reality was willing to give, certainly placed such an agent in a position where he could not faithfully serve two masters, and Astle, in reality, agreed with them that they may assume incompatible and inconsistent duties and obligations. Astle testifies that he was informed by Spencer that the owner of this land lived in Indiana or Iowa, and that he was induced to sign the contract to hold the land. It is conclusive that he knew that Spencer (though Spencer only signed the contract to convey) was not the owner of the land, and if Spencer by signing the contract, was holding the land for him, he knew that the man attempted to be bound was some owner in Indiana or Iowa. Hence he must have known that Spencer was assuming to act for another as the owner of the land, and when Spencer signed the written contract, purporting to obligate himself to convey the property, he knew that Spencer was purporting to act as

the owner's agent. This fact is so clear in this record that the trial court could assume its conclusiveness; and therefore, if the issue were proven that Spencer was the agent of the owner of the land, Astle should be denied a recovery.

Upon the question of agency of Cleal, the record shows that Spencer had written Cleal, inquiring of the latter if he desired to sell the land, and, if so, upon what terms, and in a part of the correspondence advised Cleal to have nothing to do with real estate agents; and after receiving the terms of $5,000 on terms, or $4,800 cash, Spencer advised Astle to stay with his price upon the land, and in dealing with Orr assumed to take Orr's check as a forfeit upon the land, and according to his theory binding Orr to Cleal for the land. Astle introduced the testimony of Cleal to the effect that Spencer had the authority indicated in the correspondence to sell the land. We have no doubt but what Spencer was authorized as Cleal's agent to offer the land for sale, and upon the terms indicated; and we are likewise convinced that if Spencer received an offer of $5,000 on terms, or $4,800 cash, it would have been his duty to submit all offers of any prospective purchaser, especially if Spencer assumed to act in dealing with the purchaser. If Spencer received the cash offer of $5,000, and if he assumed to act to sell this land for Cleal, it was the duty of Spencer to submit such an offer—in reality to make a full disclosure. Instead, he informed Cleal that he had sold the land to Orr, who, as a purchaser of the property, Cleal never heard of until after Astle negotiated for the property.

Spencer could not pretend to bind Orr to Cleal by assuming to act for Cleal, and never communicate the offer to Cleal, and then attempt to hold Cleal to Orr, and Orr to Cleal, by virtue of the correspondence, and then communicate Astle's offer as Orr's offer, and continue to say he was representing Orr only and not Cleal. At least he could not affirm such by denying the duty to submit the $5,000 offer in cash by Astle, if it were made. The very authority which he assumed in finally closing the trade for Orr with Cleal made him the agent of Cleal at the very time Astle made the offer, if he made it.

When Astle offered to take the land, Orr in law had nothing to sell to him, for in legal contemplation Orr had purchased nothing, and Astle never knew or heard of Orr in the transaction, and Orr bought nothing from him. The deed was from Cleal, and the minds of Astle and Orr had never met. In law Astle was the real purchaser and Cleal the real seller, which position appellee also assumes. And again, when Astle agreed with Jines that if Jines would submit the offer of $5,000 cash, if accepted, he would pay Jines a 5 per cent. commission, and when Jines called Spencer to his assistance for the purpose of submitting said offer, and the latter became a party to the agreement for that purpose, and when, as a part of the same transaction, Astle entered into an agreement to give $7,040 for the purpose of "holding the land pending the offer of $5,000," at the request of Mr. Jines, and when Spencer signed the contract to convey the land (whether it bound anybody), the purpose of Astle was clearly to bind the owner in Indiana or Iowa (whatever the purpose of Jines and Spencer), through the agency of Spencer, and at the same time through the same agency obtain the submission of a less offer.

[1] It is fundamental that:

"A person will not be permitted to take upon himself the character of an agent, where on account of his relation to others, or on account of his own personal interest, he would be compelled to assume incompatible and inconsistent duties and obligations." Mechem on Agencies, § 66; Armstrong v. O'Brien, 83 Tex. 635, 19 S. W. 268; Moore v. Kelley, 162 S. W. 1034.

[2] After quoting the foregoing from Mechem, the Court of Civil Appeals of the Second District, in the case of Wm. Cameron & Co. v. Blackwell et al., 115 S. W. 858, further said:

"No man can faithfully serve masters of conflicting interests, and the law does not countenance contracts made by one acting in such dual capacity. Where the person seeking to benefit by the act of an agent so offending knows of the agent's wrongful conduct, he becomes a party to the wrong, and cannot be aided thereby."

The facts in that cause are not the facts here, but the principle is applicable.

Astle, in proving the agreement of Jines and Spencer to submit the offer of $5,000, proves it as part of the same transaction to purchase the land for $7,040, and, said transaction apprising him of double agency, he is unable to recover. The proof of his whole contract proves the intention to take advantage of double agency. He was attempting to bind the owner in Indiana or Iowa, and at the same time submit a less offer through the same source. We have to notice this as a part of his cause.

Appellants Jines and Spencer, in their brief, are contending that, because Astle paid what he agreed to pay, no legal fraud was perpetrated. The Supreme Court of California, in the case of King v. Wise, 43 Cal. 634, said:

"The plaintiffs may have been willing to purchase the land at the price they paid, or at even a larger price, and may not wish to rescind the sale; but they are none the less entitled to hold the defendant to a strict observance of the trust confided to him, and to enjoy their proportionate benefit of any bargain he may have made. They do not complain that they were induced to pay more than the land was worth, but that they would have paid less if the defendant had been faithful to his trust."

The Supreme Court of Tennessee, in the case of Moinett v. Days, 1 Baxt. 431, very similar in features in some respects to this case, announced the same doctrine in substance, by canceling an excess note, over the real price of the owner, and where a fictitious purchaser was injected into the transaction in aid of the fraud.

The trial court charged the jury, in substance, that if Jines and F. C. Spencer agreed with Astle to submit to the owner of the land a $5,000 cash offer for the purchase of said property, and if they agreed with said Astle that he would not be required to pay the sum of $7,040, stipulated in the written contract, only in the event that the owner of the land refused a cash offer, and that if the owner of the land would have accepted said offer, and if Jines and Spencer fraudulently concealed from Astle the willingness of the owner to accept said $5,000 offer, for the purpose of defrauding Astle out of the difference between the sum of $5,000 and $7,040, and used the agreement and the contract between them for the purpose of inducing Astle to execute the notes and pay the cash difference between the two prices, and if Astle relied upon said agreement, and in consequence executed the notes and paid the cash, to find against Jines and F. C. Spencer for the cancellation of the note and for the excess sum of $1,020. Double agency, if Jines and Spencer agreed to submit the $5,000 cash offer, was clearly in the case, and Astle was apprised of such acts, as to clearly impute notice to him.

The appellants complain that their special charge No. 4 embodying the doctrine of double agency, should have been submitted to the jury. It would be misleading to appellee and the trial court to merely reverse and remand a cause which, upon the same facts, and upon another appeal, this court would treat differently.

[3] Upon consideration of the twelfth assignment of error, as to the permission by the trial court to the defendant to open and close the case, based upon the admission of plaintiff's cause of action, we think, under the rules, the trial court erred. By virtue of this admission, "the proceedings are placed in such a status that, if neither party offered any evidence, judgment would be rendered, as a matter of law, in favor of the plaintiffs." Sanders v. Bridges, 67 Tex. 93, 2 S. W. 663. That was a cause wherein the defendant specifically admitted every fact pleaded in plaintiff's petition, except one, which he specifically denied, and in consideration of which the Supreme Court said did not measure to the standard.

The plaintiffs in this cause had pleaded in their original petition that they were "the legal owners and holders of said notes, both having been legally transferred to defendant Charles Orr, by written assignment by the said defendant Arthur D. Cleal, on or about the 26th day of August, 1909, and said assignment did transfer to the said Orr all the rights, title, and interest held in said notes by the said Cleal, as well as the vendor's lien." In plaintiff's first supplemental petition (paragraph 6 of same) the same allegation in substance was made referring to the same instrument of transfer.

The defendant, by supplemental answer, pleaded "that the transfer mentioned in the sixth paragraph of said petition as having been executed by A. D. Cleal does not refer to or transfer the notes in suit as described in plaintiff's original petition, or the lien securing same, so this defendant is informed and therefore alleges the fact to be," which pleading was sworn to by the defendant.

A partial explanation by appellee, in justification of the position that the admission was good and that this pleading was harmless, is based upon a theory that an admission has no reference to supplemental pleadings, referring to the cases of Blume v. Haney, 128 S. W. 440 and Taber v. Eyler, 162 S. W. 490; the latter having been decided by this court. Those cases have no application here. It may be true that the same transfer should not have been pleaded in the supplemental petition in repetition of the same transfer and of the same fact pleaded in the original petition, as it is not the office of a supplemental petition; however, it was not excepted to. We think the specific denial of a fact in the supplemental petition, which is in repetition of the same matter in the original petition, and which is a part of plaintiff's cause of action, would have placed the plaintiff in a position, where denied under oath, to have proved the transfer, and the court could not have rendered judgment, as a matter of law, if neither party had offered any evidence.

The twentieth assignment complains of the court's action in permitting the testimony of the defendant Astle, which testimony is to the effect that defendant told his son-in-law Gilmore to take down his deposit in the State Bank of Ochiltree, and that, when Gilmore returned, the latter reported that they would not give up the deposits, as all the title papers were in the bank, etc. The court, in permitting this testimony, "remarked to the jury that they would consider said testimony only as showing the reason for the acts of William Astle." The remarks of the court trench very closely, if not over the line, with reference to his duty, in avoiding comment upon the weight of the testimony. We assume that a justification for this testimony, and one reason affording the admissibility of same, is to show, upon the part of defendant, why he made no demand upon Jines and Astle as to the submission of the $5,000 offered. A jury may ask the question in their minds, without testimony of this character: What is the reason Astle never inquired whether said offer had ever been submitted to Cleal and rejected? And the remarks of the court that said testimony was admissible only "as showing the reason for the acts of William Astle" might be construed by a jury that the court considers the testimony a sufficient reason for that purpose. As to the objections made, we think the testimony, as an original proposition, was admissible. Haney v. Clark, 65 Tex. 98.

[4] It is questionable if defendant's testimony, wherein he stated, "My health is in a precarious condition, and I probably could not attend the trial of this case," was admissible over the objection of plaintiff that it was an opinion and conclusion of the witness as to his condition, as complained of in the thirteenth assignment. Of course it would be entirely admissible to have testified as to his condition as a justification for the failure of his personal attendance at the trial; but, in the form suggested by the testimony, we think it might be calculated to some extent to excite the sympathy of the jury.

The twenty-fourth assignment of error is complaint of the court's action in admitting certain testimony of O. P. Gilmore, the son-in-law of Astle, with reference to changing the terms of a certain contract and the withdrawal of certain deposits, which testimony was to the effect that said contract was changed by the payment of $100 made by the said Jines. A fuller statement in appellee's brief than appellants subjoined in their brief answers some of the objections made by the latter. The question of the authority of Gilmore, as well as the contract and deposit referred to, were questions for the jury, and considering the specific objections made, without enumerating them, we are unable to say that the testimony should have been excluded.

Appellants' urge, under their ninth assignment of error, that their tenth special exception, raising the question of a misjoinder of causes of action, in defendant attempting to recover at the same time the same sum, both for the damage done to Astle, the purchaser, and Cleal, the vendor, should have been sustained. Appellants eliminated their alternative cause of action predicated upon the alleged damages to Cleal, and it is unnecessary to decide whether such an exception would have been good or bad, as the question is entirely abstract.

[5] The notes are not in this record. Appellants allege error on account of the court peremptorily instructing the jury to render a verdict in favor of Orr, who was one of the indorsers of the notes. Appellants alleged in their original petition that Orr indorsed the notes in blank, and there is no allegation in justification of the failure to sue at the first or the second term of the court, in view of such indorsement.

The verdict of the jury in this case "in favor of defendant William Astle and against A. M. Jines and F. C. Spencer was for the cancellation of the notes sued upon and held by A. M. Jines, for the sum of $1,020, * * * in favor of William Astle, and over against A. M. Jines and F. C. Spencer, in the sum of $729.52, being the amount of the verdict rendered in favor of S. M. Spencer." S. M. Spencer was a party plaintiff to the cause of action as an innocent purchaser of one of the notes in suit, and on account of which the court peremptorily instructed the jury in his favor against Astle for the sum of $729.52, which was the occasion of the verdict, to that extent in favor of Astle against Jines and Spencer for said sum.

We reverse that part of the judgment in this cause in favor of Astle against Jines and F. C. Spencer, both for the cancellation of the notes sued upon, as well as for the amount of money recovered by him against said parties, as indicated in the verdict mentioned, and affirm the judgment in all other respects.

If Jines and Spencer agreed to submit the offer of $5,000 cash in behalf of Astle, under the same facts suggested by this record, Astle could have no recovery against them, for the reasons indicated in this opinion. We think the law should not encourage the enforcement of contracts, the effect of which would be the use by one principal of another principal's agent, in violation of the duty said agent owed to the other principal. The only thing the court should submit is whether the agreement was made with reference to the $5,000 offer, agreeing to the submission of same to Cleal, the owner of the land; and, if so, the court's judgment should be that neither of these parties take anything in said suit. There should be no relief to Astle canceling the note, and no judgment in his favor for the money, and necessarily no judgment in favor of Jines on the note obtained by him by virtue of the transaction.

We have attempted to carefully consider all the assignments of appellants, and, except as indicated herein, they are overruled.

Reversed and remanded in part, with directions in accordance with this opinion, and affirmed in part.

## On Motion for Rehearing.

The appellee Astle quite urgently insists that, as to the question of fraud and double agency discussed in the main opinion, denying a recovery in Astle's favor constitutes serious error. We think it clear from the record in this proceeding that Astle is in effect saying:

"A contract existed for my benefit, by the terms of which Jines and Spencer were to submit an offer of $5,000 cash, for which I was to pay 5 per cent. commission, but, in the event the landowner refused to take that amount of land, an offer of $7,040 will then be submitted to said owner, and with reference to which we will attempt to bind the owner, through Spencer, his agent, by written contract for that purpose."

When the transaction between Astle, Jines, and Spencer was completed as to the manner and method to be pursued by Jines and Spencer, for the purpose of procuring the land for Astle from the owner, the evidence conclusively shows that Spencer (at least as between Jines, Spencer, and Astle), was acting for the owner of the land, and that Astle was using Spencer for that purpose; and the evidence really discloses that an agency in reality existed between Spencer and the

owner of the land for the submission by the latter to the former offers for cash as well as upon terms. As between the three, Astle, Jines, and Spencer, while the name of the owner was never disclosed to Astle, the transaction as a whole, and as finally consummated, was to procure the particular tract of land through Jines and Spencer (particularly the latter) by either one or the other of the two methods mentioned; and while the latter method (the $7,040 offer) was used by the agents, and though it may be to the detriment of Astle and the owner of the land, and though the agents procured from said owner some $2,000 in money and in notes, in excess of $5,000, which latter amount would, if it had been submitted by Spencer, have been received, but with all this the question nevertheless remains: Does Astle, when the whole transaction as to the method these parties agreed to pursue to obtain this land, have to deraign his recovery through a void contract? One of the phases of appellee's argument, if we understand it correctly, is: First, that, because Jines and Spencer intended to and did perpetrate a fraud upon him by not submitting the $5,-000 offer (which would have been received), the whole undertaking is a void transaction; and, second, "even if all parties to the matters here presented were to some extent involved in an illegal undertaking, yet they are not in pari delicto, * * *" or, in other words, as to the latter proposition, the fraud of Jines and Spencer, intended and perpetrated by them upon Astle, is so much greater than the fraud, by virtue of the fact that he was willing to use Spencer, the landowner's agent, to submit an offer (true for cash) $2,000 less than he was in reality willing to give, that Astle should be permitted a recovery, and we might add the conclusion notwithstanding that said recovery is through the medium of a void contract. The contention is, viewed in another phase, Spencer should have submitted the $5,000 offer, and should not have submitted the $7,-040 offer, which Astle was in reality agreeing should be submitted, and hence, because the owner would have taken the $5,000, he is entitled to a recovery of said sum.

How does Astle establish his right to the $2,000 from Jines and Spencer? If the contract is as stated, he establishes it by proving that Jines and Spencer collaborating with him, agreed to submit the offer of $5,-000, and, as a part of an agreement in obtaining the land from the owner through one whom he knew was acting as the owner's agent, to keep secret another offer, $2,000 more in amount, only to be disclosed in the event the $5,000 offer is rejected by the same landowner. How we can eliminate and make several the $5,000 part of this contract from the other terms, as to methods to be procured to obtain this land, when the whole transaction was finally agreed upon, is beyond our

discrimination; and, why such a contract and transaction as finally made has not a fraudulent tendency, we are unable to debate. We are not concerned with the question whether such a contract, in its final development, was an injury or a benefit to some third party; the question is one of tendency. The case of Rice v. Wood, 113 Mass. 133, 18 Am. Rep. 459, decided by the Supreme Court of that state, disclosed that a broker had certain real estate for disposition, and that said broker afterwards, without the knowledge of said owner, made an agreement with another party by which said broker was employed to act for said other party in exchanging corporation stock to the owner of the real estate. The owner of the stock knew that the broker was entitled to a commission from the owner of the real estate if the same were sold; however, when the corporation stock was exchanged to the landowner, though the owner of the stock agreed to pay a commission, he refused to do so. The broker sued the owner of the stock, and, notwithstanding the latter had knowledge of the whole transaction, the Massachusetts Supreme Court said:

"A contract by which one is placed under a direct inducement to violate the confidence reposed in him by another is of this character. * * * No one can be permitted to found rights upon his own wrong, even against another also in the wrong. * * * Nor is it necessary to show that injury to third persons has actually resulted from such a contract, for, in many cases where it had occurred, this would be impossible to be proved. The contract is avoided on account of its necessarily injurious tendency."

The case of Everhart v. Searle, 71 Pa. 256, disclosed that an owner of land employed a real estate broker to sell the property, agreeing to give the broker all that the latter could obtain over $125 per acre. The broker had several applications to purchase the property, one of whom agreed to pay said broker the sum of $500 for a preference. The latter was sued by the broker, and the contention was made that the owner got his price for the land, but the Supreme Court of Pennsylvania said in effect that the transaction is to be regarded as against the policy of the law, and it matters not that no fraud was meditated and that no injury was done. The rule is not intended to be remedial of actual wrong but preventive of the possibility of it.

The Commission of Appeals (Armstrong v. O'Brien, 83 Tex. 649, 19 S. W. 268) also held contracts of a double agency void on the ground of their tendency.

Circuit Judge Taft said in the case of Continental Trust Co. v. Toledo, St. Louis & K. C. Ry. Co. (C. C.) 86 Fed. 945:

"Any agreement or understanding between one principal and the agent of another, by which such agent is to receive a commission or reward if he will use his influence with his principal to induce a contract, or enter into a contract for his principal, is pernicious and corrupt, and cannot be enforced at law. This

principle is founded upon the plainest principle of reason and morality, and has been sanctioned by the courts in innumerable cases."

The Supreme Court of the United States said in the cause of McMullen v. Hoffman, 174 U. S. 656, 19 Sup. Ct. 845, 43 L. Ed. 1124:

"Upon the point as to the ability of the plaintiff to make out his cause of action without referring to the illegal contract, it may be stated that the plaintiff for such purpose cannot refer to one portion only of the contract upon which he proposes to found his right of action, but that the whole of the contract must come in, although the portion upon which he founds his cause of action may be legal. Booth v. Hodgson, 6 T. R. 405, 408; Thompson v. Thompson, 7 Ves. Jr. 470; Embrey v. Jemison, 131 U. S. 336, 348 [9 Sup. Ct. 776] 33 L. Ed. 172, 177."

And Justice Peckham in that cause, adopting the language of Lord Kenyon, in the cause of Booth v. Hodgson, supra, where the latter justice was remarking upon an argument made before him, said:

"They say to the court: 'Suffer us to garble the case, but suppress such parts of the transaction as we please, and to impose that mutilated state of it on the court as the true and genuine transaction, and then we can disclose such a case as will enable our clients to recover in a court of law.' Such is the substance of this day's argument. It is a maxim in law that a plaintiff must show that he stands on a fair ground when he calls on a court of justice to administer relief to him."

Of course the principles are plain and fundamental; and we also think they are plainly and fundamentally applicable here.

The motion is overruled.