**Robert H. WEST, et al., Appellants,**

v.

**Gifford TOUCHSTONE, d/b/a Gifford Touchstone & Company, Relators, Appellees.**

**No. 20501.**

Court of Civil Appeals of Texas, Dallas.

May 26, 1981.

Rehearing Denied June 24, 1981.

Carl David Adams, Adams, Mims & Vorpahl, Dallas, for appellants.

Ronald W. Johnson, Touchstone, Bernays, Johnston, Beall & Smith, Dallas, for appellees.

Before GUITTARD, C. J., and AKIN and STOREY, JJ.

AKIN, Justice.

This is an appeal from a summary judgment rendered in favor of defendant Gifford Touchstone against plaintiffs Robert H. West, Lorraine West, James S. Johnson, John R. West, III, John H. Donaho, Glen Donaho and Nell Donaho Fisher. The principal question presented by this appeal is whether Touchstone established, as a matter of law, that he was not the agent of appellants. We hold that Touchstone failed to negate his agency as a matter of law. Accordingly, we reverse and remand.

Appellants[1] are the owners of certain real property. In May 1975, they entered into an exclusive listing agreement with Touchstone to sell the property. In August 1976, West informed Touchstone by letter that the exclusive listing agreement was terminated. In 1977, Touchstone was contacted by a party who expressed an interest in purchasing West's property. Touchstone had previously shown the property in question to this prospective purchaser in 1975 when he was acting as West's exclusive agent. Touchstone advised West of the prospective purchaser's interest in the property and agreed to assist in bringing the parties together. During this period, West was attempting to negotiate a sale of the property with the Dallas Housing Authority (DHA). Touchstone wrote a letter to the Dallas City Manager, which was subsequently forwarded to the DHA, stating that the tentative purchase price which West and the DHA were discussing was excessive and that the market value for comparable land in the area was far less than the discussed purchase price. West alleges that Touchstone's letter and subsequent contacts with officials at the DHA resulted in the DHA's failure to purchase the property.

West's second amended petition[2] alleged causes of action against Touchstone for breach of fiduciary duties, failure to disclose amounting to fraud, deceptive trade practices, and violation of the Real Estate Brokers' Canons of Ethics amounting to negligence. The gravamen of West's complaints is that Touchstone was acting as their agent at the time he wrote the letter in question and that his communications with Dallas officials constituted violation of his duty of loyalty as their agent, actionable under the four broad causes of action alleged. In response, Touchstone filed a motion for summary judgment which the trial court sustained.

Touchstone's motion for summary judgment specifically alleged that he was not, at the relevant times, West's agent and that he owed no fiduciary duty to West. The summary judgment evidence shows that on May 30, 1975, John R. West Co. and Gifford Touchstone & Co. entered into an exclusive listing agreement with respect to the property the subject of the instant action.[3] The

---

1. Appellants will be referred to herein collectively as West.

2. The motion for summary judgment in the instant case was heard on March 14, 1980. Appellants second amended petition was filed on April 3, 1980. Summary judgment was rendered on April 7, 1980. The record fails to disclose that West obtained leave of court to file this second amended petition. However, the judgment recites that the pleadings on file were considered, and the record is devoid of any objection in the trial court by Touchstone to the court's considering the second amended petition. Also no complaint is made by Touchstone on appeal with respect to this matter. Consequently, any failure of West to obtain leave of court to file the second amended petition was cured by the trial court's action in considering that petition. *Swinney v. Winters*, 532 S.W.2d 396, 400 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.).

3. Although the agreement was in the names only of John R. West Co. and Gifford Touchstone & Co., appellants maintain that Touch-

exclusive listing agreement provided that it would be in effect for twelve months and thereafter from month to month until either party gave the other one month's prior written notice of termination.

On August 12, 1976, John R. West wrote Touchstone to inform him that "the Sales Agency Agreement between Gifford Touchstone & Co. and the John R. West Co. ceased to exist as of May 20, 1976." The letter further stated that: "As a result of our desire to promote our property through you or others, we made a sales agreement with Moser Co. for the sale of a portion of the John R. West Co. property on June 4, 1976."

Touchstone argues that this letter terminated any agency relationship between him and West. He further asserts that, after receiving the letter, he did not enter into any other agency agreement with West. Thus, he contends that, at the time relevant in this lawsuit, he was not West's agent and owed no duty of loyalty to West as his principal.

We need not address the question of whether the letter from John R. West to Touchstone completely terminated the agency relationship between them, as Touchstone contends, or whether the letter terminated only the exclusive feature of the relationship, as West argues. This is so because the summary judgment evidence does not negate, as a matter of law, the existence of an agency relationship, apart from the exclusive listing agreement, which West maintains existed between them at the time of Touchstone's alleged communications to the DHA.

In this respect, Robert H. West's affidavit states:

In late July or early August 1977 Gifford Touchstone had contacted me and had informed me that Roy Millican, through his agent Zettie Bozeman, was again interested in purchasing the property from us. Since this was the same property which we had been negotiating to sell to the Dallas Housing Authority, *I relayed the information concerning the price and the details of the transaction to Gifford Touchstone* and told him that, while we would be willing to discuss the matter with Millican and his agent, we would have to have entirely different terms than were proposed approximately one year earlier. *Following that conversation Mr. Touchstone assured me that he would work to convince Millican to increase his price*, and a meeting for this purpose was established in Gifford Touchstone's office approximately October 1, 1977. [Emphasis added.]

▓▓ Touchstone contends that, as a matter of law, he has established that he was a mere middleman between West and Millican and, as such, owed West no fiduciary duties. We disagree. An agent is one who consents to act on behalf of and subject to the control of another, the principal, who has manifested consent that the agent shall so act. The relationship between agent and principal is a fiduciary relationship. RESTATEMENT (SECOND) OF AGENCY § 1 (1958). Applying this definition of an agent to the facts of this case, we hold that a fact issue exists as to whether Touchstone was the agent of West and, therefore, owed him fiduciary duties. The fact issue is presented by the affidavit of Robert H. West which states that Touchstone agreed to negotiate with Millican in order to get Millican to increase the amount of his offer. Additionally, the information obtained by Touchstone with respect to the proposed sale to DHA was obtained during his discussions with West as to the proposed Millican negotiations. Taken as true, this testimony indicates that Touchstone was acting on behalf of, and with the consent of, West and that Touchstone was thus West's agent. If Touchstone was West's agent, Touchstone owed West a fiduciary duty of loyalty, that is, to act solely for the benefit of his principal in all matters connected with his agency. RESTATEMENT (SECOND) OF AGENCY § 387 (1958). It follows that Touchstone's communications with the DHA, if made by him while acting

stone was hired as the agent for all of them, apparently on the basis that John R. West Co.

was acting on behalf of all of the appellants.

as West's agent or if the information communicated to the DHA was obtained by him while acting as West's agent, would be in violation of his duty of loyalty to West.

In contending that, as a matter of law, he was a mere middleman between West and Millican and, therefore, owed West no fiduciary duties, Touchstone relies primarily on *Peters v. Lerew*, 139 S.W.2d 321 (Tex.Civ.App.—Galveston 1940, writ dism'd judgmt cor.). We do not construe *Peters* as standing for the proposition that a "middleman" owes no fiduciary duties even though he is acting on behalf of another. We conclude that even though a broker may be a "middleman," he may nevertheless be an agent, as defined by the *Restatement*, if he undertakes to perform services on behalf of an owner.

Nevertheless, Touchstone maintains that any communication he may have had with the DHA constituted a privileged exercise of his right to question the expenditure of public funds and was in protection of his rights as a taxpayer and a citizen. We hold that such a right as a citizen does not extend to excuse a violation of an agent's duty of loyalty to his principal. In other words, if Touchstone was the agent of West at the time of his communication or communications to the DHA, he was not privileged to make such communication or communications in derogation of West's interest. The cases cited to us by Touchstone in this respect are distinguishable in that they do not deal with communications made by an agent in violation of a duty of loyalty to his principal.

Touchstone further contends that any communication he had with the DHA was true. We hold, however, that if Touchstone was West's agent at the time of his communication with the DHA, whether the statement was true is no defense in a suit by a principal against a disloyal agent.

Touchstone next argues that West did not have a binding contract of sale with the DHA and that any possible expectation of West with respect to the DHA's purchase of the land in question was too remote and speculative to form the basis of a recovery against Touchstone. We cannot agree that this is a ground for affirmance of this summary judgment. This but raises a fact issue as to whether Touchstone's communication with the DHA caused the body not to enter into a contract of sale with West. Proof of such causation, along with proof of the other elements of West's claims, may entitle West to recover from Touchstone.

Finally, Touchstone contends that the reasons for the DHA's decision not to purchase West's land are fully set forth in a letter from William H. Darnall, Executive Director of the Housing Authority of the City of Dallas, to John R. McDowell, Area Director of the Department of Housing and Urban Development, and that this letter fails to make any mention of Touchstone's communication with the DHA. The letter is attached to Touchstone's motion for summary judgment as an exhibit. Even assuming that the letter is properly in evidence before us, it raises no more than a fact issue as to whether Touchstone's communication with the DHA caused the DHA to refrain from purchasing West's Property.

In summary, we hold that Touchstone has not negated, as a matter of law, one or more essential elements of West's causes of action. Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings.