**James W. HUGHES, Appellant,**

v.

**MIRACLE FORD, INC., Appellee.**

**No. 05–83–00806–CV.**

Court of Appeals of Texas,
Dallas.

July 30, 1984.

Rehearing Denied Sept. 10, 1984.

Charles M. Wilson, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, for appellant.

Don Bush, Jenkens & Gilchrist, Dallas, for appellee.

Before STEPHENS, SPARLING and ROWE, JJ.

STEPHENS, Justice.

James W. Hughes sued Miracle Ford, Inc. to recover a commission due on a finder's fee contract, whereby Hughes agreed to procure a group of Mexican citizens to purchase automobile parts from Miracle Ford. After a jury trial in which the jury answered special issues favorably to Hughes, the trial court on motion of Miracle, rendered Judgment Non Obstante Veredicto. In five points of error, Hughes challenges the trial court's judgment, contending that the evidence offered established his right of recovery, and that Miracle's evidence failed to establish a defense. Miracle responds by contending in one reply point that the trial court did not err by rendering a Judgment Non Obstante Veredicto, and by contending in two conditional cross-points that Hughes' recovery, because of his dual agency, is dependent upon his securing a favorable jury finding that both principals had knowledge of and consented to his receiving payment from both. Miracle seeks a remand for trial of this issue, should the court determine that the issue should have been submitted by Miracle instead of Hughes. We agree with Hughes' argument, and we disagree with Miracle's argument. Accordingly, we reverse and render judgment for Hughes.

Although numerous arguments are advanced, the principal question is whether an agent acting in a dual capacity for two principals, has the burden to secure a favorable finding that both principals had knowledge of and consented to payment to the agent by both principals.

The facts of the case are essentially undisputed. Hughes approached Miracle and represented to its president that he had a prospect in Mexico who desired to buy a large amount of automobile parts. This interested Miracle, and the parties tentatively agreed to a contract whereby Hughes would be paid a commission. Hughes then put Miracle in touch with the Mexican group, and Miracle and the Mexicans commenced negotiations. Miracle's attorney prepared a written finder's fee agreement which was executed by Miracle and Hughes. Hughes then made a trip to Mexico in an attempt to close the deal. Although Hughes attempted to assist both Miracle and the Mexican group, the negotiations resulting in the final contract of sale between Miracle and the Mexicans were not participated in by Hughes, nor were their terms made known to him.

Four contracts were executed during the negotiations: the finder's fee contract which provides for compensation to Hughes if Miracle sells the automobile parts to a firm named Hemca S.A.; "the May 8 contract" between Miracle and Hemca, S.A. which was never signed; "the May 15 contract," between Miracle and Auto Accessories H.E.M., S.A. and Erasmo Uribe Cantu, d/b/a Export Auto Parts Service, which was executed but not acted upon; and "the July 13 contract" and addendum, between Miracle and Export Collision Parts, Inc., guaranteed by Auto Accessories H.E.M., S.A. and Hector Martinez, individually, which was the final contract under which the automobile parts were sold and delivered.

Miracle argues that as a matter of law Hughes cannot recover because the sale actually made was not the sale contemplated in the finder's fee contract. This argument encompasses both the question of the final sale being to a different entity than that set out in the finder's fee agreement and the fact that the final contract contained substantially different terms than the original contract contemplated. We disagree.

First, with respect to the change of corporate purchaser, the evidence shows that from the inception of the negotiations, the Mexican purchasers were represented by Mr. Cantu and Mr. Martinez. Mr. Martinez testified that the change of the corporate names was to facilitate handling the deal, and that the parts were still being bought for Hemca. The jury found that Hughes secured for Miracle the benefits of a sales contract between Miracle Ford, Inc. and Hemca S.A. as contemplated by the finder's fee agreement. It was clearly shown that Hughes brought the parties together in the first instance, which resulted in the ultimate sale. As was held in *Groves v. Hanks*, 546 S.W.2d 638 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r. e.), the line between cause and effect is unbroken. This argument is overruled.

Miracle next argues that the terms of the ultimate contract of sale were materially altered from the terms contemplated by the initial negotiations, which negates Hughes' right of recovery. In Miracle's brief and at oral argument, Miracle contends that the most substantial change is a change in the price, and also points out changes in letter of credit requirements, transfer of title, responsibility for damaged goods, method of payment, and a requirement of a personal guaranty. The evidence is clear that Hughes was not a party to any changes in the contract, nor did he have knowledge of these changes. The law is firmly established that a principal cannot avoid liability for payment of a brokerage fee by revising the terms of the sale without the broker's consent. Whether the ultimate sale is negotiated for a greater or lesser price is of no consequence. *Morris v. Jordan Financial Corp.*, 564 S.W.2d 180 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r. e.). We overrule this argument.

Miracle's principal argument is that Hughes was acting as agent for both Miracle and the Mexican group, and therefore it was incumbent upon him to secure a jury's finding that he received compensation with full knowledge and consent of both parties. Miracle acknowledges that

the jury found that Hughes was the agent of the Mexican group and that he disclosed that fact to Miracle prior to the execution of the finder's fee contract, yet argues that disclosure of agency is not tantamount to a finding that the Mexicans were paying him because an agent may act without pay. Miracle places its reliance on this proposition on the opinion in *Porter v. Striegler*, 533 S.W.2d 478 (Tex.Civ.App.—Eastland 1976, no writ). We have carefully considered that case and do not agree that it stands for the proposition asserted by Miracle. The *Porter* case recites that a real estate agent is not entitled to receive a commission from both the seller and the purchaser without the full knowledge and consent of both parties. The receipt of a commission from both seller and purchaser is analogous to representation of both parties by the agent. The general rule of law as to dual agency is well stated in Corpus Juris Secundum, on which the *Porter* case partially relies for its authority. 12 C.J.S. Brokers § 62 (1980) lays down the general rule that a transaction in which the broker, without his principal's knowledge and consent, also represents the other party thereto, is contrary to public policy and unenforceable. The section also sets out the rule that a broker may act as the agent of both, where he so acts with the full knowledge and consent of both. The section further sets out the exception that where a broker exercises no judgment or discretion, but acts merely as a middleman to bring the parties together, or to execute a contract after it is agreed on, with no inconsistent duties, he may act for both parties. The case of *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 145 S.W.2d 235 (Tex.Civ. App.—Galveston 1940), *rev'd on other grounds*, 138 Tex. 565, 160 S.W.2d 509 (1942), recognizes this exception. The evidence in this case shows that Hughes testified that Miracle knew that the Mexicans were paying him before the finder's fee agreement was executed, and that the Mexicans knew that Miracle was paying him before the finder's fee agreement was executed. Bill Calva, a witness, testified that the Mexicans had paid a finder's fee to Hughes, and that prior to the finder's fee contract between Hughes and Miracle, he had personally discussed with Mr. Cantu, the agent of the Mexicans, the fact that Hughes was being paid by Miracle. The jury found, in response to special issues, that Hughes was the agent of Hemca, S.A. and Auto Accessories H.E.M., S.A. and that Hughes "disclosed the fact of his agency to Miracle prior to May 6, 1981." We find no objection to this issue in the record. This issue was proper under the facts of this case. We also hold that under the undisputed evidence, Hughes took no part in the negotiations between the parties, and thus his actions as dual agent, had the fact not been disclosed, would have fallen under the exception set out in *Kinzbach*.

■ Miracle also argues that Hughes failed to prove his damages. We disagree. During trial, two stipulations by the parties were read into the record. One stipulation was as to the gross profits less allowable expenses, under the terms of the May 15 and 31 contracts and the June addendum to the contract, computed in accordance with the original price structure under which the finder's fee contract was drawn. The other stipulation was as to the gross profits less allowable expenses, under the same contracts, computed in accordance with the price structure established by the June addendum which was negotiated between Miracle and the Mexican group, without the knowledge of Hughes. We hold that Hughes was entitled to a commission based upon the formula set out in the finder's fee contract, irrespective of the final terms agreed upon between Miracle and the Mexican group. The net profit, as stipulated, was $248,000.00. The finder's contract entitled Hughes to 25% of this figure. Consequently, Hughes is entitled to a commission of $62,000.00. Additionally, the parties stipulated that a reasonable attorney's fee for the prevailing party would be the sum of $7,750.00 for services rendered through the trial court, an additional sum of $3500.00, for services rendered through the Court of Appeals, an additional sum of $2000.00 if the case is appealed to the

Supreme Court of Texas, and an additional sum of $1500.00, in the event the Supreme Court of Texas grants the writ. Accordingly, Hughes is entitled to his reasonable attorney's fees in the sum of $7,750.00, for services rendered through the trial court, together with the sum of $3,500.00, for services rendered through the Court of Appeals.

The judgment of the trial court is reversed, and judgment is here rendered that James W. Hughes have and recover from Miracle Ford, Inc. the sum of $62,000.00, together with the sum of $11,250.00 as reasonable attorney's fees. Interest, as provided in TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 2 (Vernon Supp.1984) shall accrue on the sum of $69,750.00 from the 13th day of May, 1983, the date of the district court's judgment, until the date of this opinion, and thereafter on the total judgment here rendered until paid.