RAUSCHER PIERCE REFSNES, INC., Appellant,

v.

GREAT SOUTHWEST SAVINGS, F.A. and Windtree Financial Corporation, d/b/a Windtree Mortgage Services, Appellees.

No. 14–94–00748–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 2, 1996.

Thomas G. Yoxall, Dallas, Martin R. Griffin, Dallas, for appellant.

Steven A. Leyh, Houston, Deborah Essig Taylor, Houston, Nancy Manderson, Houston, for appellees.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

**OPINION**

AMIDEI, Justice.

Rauscher Pierce Refsnes, Inc. ("RPR") appeals from a bench trial judgment in a contract suit in favor of Great Southwest Sav-

ings, F.A. ("GSW") in the sum of $325,961.40 plus attorney fees in the sum of $108,000.00. The trial court granted take nothing judgments in favor of appellee Windtree Financial Services ("Windtree") against suits by appellant RPR and by appellee GSW. No notice of limitation of appeal was given by RPR with respect to Windtree, who is joined in this appeal. Appellant RPR contends in eighteen points of error: (1) there is no evidence or legally insufficient evidence to sustain the findings of the trial court, (2) the evidence conclusively establishes that GSW waived or is estopped from complaining of any breach of contract or fiduciary duty by RPR, (3) the evidence is insufficient to support the court's award of damages, (4) the court erred in failing to offset the damages, (5) the court erred in failing to mitigate damages, and (6) the court erred in awarding GSW attorney fees. We affirm.

In June, 1990, RPR and GSW entered into a contract, which consisted of letter agreements and oral agreements. RPR, by letter dated June 1, 1990, addressed to GSW, agreed to represent GSW as exclusive agent and broker in a transaction involving the purchase of some loans. RPR committed to GSW that it would deliver $10 million in "FHA Insured Title I Property Improvement Loans." This letter concluded, in part, "Howard, RPR must be appointed exclusive agent for this transaction ... and all funds will be cleared through RPR for immediate settlement." This letter proposal was accepted by GSW by letter to RPR dated June 5, 1990. The parties agreed that the loans were to be existing, previously originated and funded, seasoned loans (over six months old) and the loans would be investment grade, good quality, "A" grade loans. "A" grade loans are existing loans, over six months old, with no defaults in payments ("performing"). A loan package of eighteen loans was sent to GSW by Standard Pacific Credit Corporation of Irvine, California, after GSW wired RPR the purchase price of $303,641.64 and RPR wired the money to Standard Pacific. RPR selected Windtree as a reviewing agent to review the loans for suitability. Windtree was paid by GSW for this service.

Unknown to GSW at the time, Standard Pacific "table funded" all the loans when they received the money from RPR. "Table funding" means that Standard Pacific used GSW's money to close the loans. That is, when Standard Pacific received the money from GSW to purchase the eighteen loans, it disbursed the funds to people who had signed up for improvement loans. None of the loans were insured by FHA as Title I loans; none of the loans were "seasoned" (over six months old); and none of the loans were of grade "A" investment quality (testimony by an expert was that the loans were "Grade C" paper, or inferior quality loans). Six of the loans were never "funded" with GSW's money because the checks to the borrowers from Standard Pacific bounced; these loans were in default when they were sent to GSW. At the time of trial, the evidence showed that out of the eighteen loans sent to GSW, seven were in total default, three had been paid in full, and eight were delinquent. A chart showing the balances due on the principal, interest, and expenses of all the loans was introduced into evidence and received without objection by RPR. The total amount due as principal on the loan package on the date of trial was $242,967.85. The total loss, including interest and other expenses, was $328,572.02.

Michael Castanon worked for RPR at the time this loan transaction was processed by RPR. He was in charge of handling all the details of the transaction. He contacted Standard Pacific and made all the arrangements for closing the deal. It was subsequently discovered that Michael Castanon had been a founder and director of Standard Pacific and was acting as chairman of the board for Standard Pacific when the loan was closed. None of the information concerning the relationship of Castanon and Standard Pacific was communicated to GSW prior to sending the check for the loans to RPR.

Appellant admits that the six "unfunded" loans (i.e., the ones for which no loan proceeds were paid to the borrowers because of bad checks issued by Standard Pacific) were a proximate cause of GSW's loss. Appellant claims there is no evidence or insufficient evidence to show a breach of contract or

fiduciary duty by RPR regarding the twelve "funded" loans (the twelve loans that were "funded" with the money received from GSW and used by Standard Pacific to pay loan proceeds to the borrowers). Specifically, in points of error one, two, three and four, appellant argues that the trial court had no evidence or legally insufficient evidence that RPR agreed to ensure the quality, credit-worthiness, and insurability of the loans. Appellant also argues in point of error one that RPR was only a "middleman" and had no fiduciary duty. We disagree.

■■■■ This was a bench trial and the trial judge prepared findings of fact and conclusions of law. A statement of facts was also prepared by the court reporter. Because we have a statement of facts, the trial court's findings of fact are not conclusive. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985) *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985). In reviewing the trial court's findings of fact for legal and factual sufficiency of the evidence supporting them, we apply the same standards as we apply in reviewing the sufficiency of the evidence supporting a jury's finding. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Thus, in reviewing appellant's legal insufficiency points, we may consider only the evidence and inferences, viewed in their most favorable light, that tend to support the trial court's finding, disregarding all evidence to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force to support the finding, we must uphold the finding. *See Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988). In reviewing appellant's claim of factual insufficiency, we must examine all of the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). We may set aside the finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Superior Derrick Services v. Anderson*, 831 S.W.2d 868, 871 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

■■■■ The relationship between a broker and its customer is that of principal and agent. *Magnum Corp. v. Lehman Brothers Kuhn Loeb, Inc.*, 794 F.2d 198, 200 (5th Cir.1986). An agent is one who consents to act on behalf of, and subject to, the control of another, the principal, who has manifested consent that the agent shall so act. *Moody v. EMC Services, Inc.*, 828 S.W.2d 237, 241 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Republic Bankers Life Ins. Co. v. Wood*, 792 S.W.2d 768, 778 (Tex.App.—Fort Worth 1990, writ denied); RESTATEMENT (SECOND) OF AGENCY § 1 (1958). Agency is a consensual relationship, and the agency or broker/customer relationship does not come into existence until the order has been placed and the broker has consented to execute it. *Hill v. Bache Halsey Stuart Shields Inc.*, 790 F.2d 817, 824 (10th Cir.1986); *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 337 F.Supp. 107, 111 (N.D.Ala.1971), *aff'd*, 453 F.2d 417 (5th Cir.1972); RESTATEMENT (SECOND) OF AGENCY § 15 (1958). *See also Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 483, 492–93 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

■■■■ If a broker, under his contract with his principal, is charged with no responsibility and is not obligated to exercise any discretion, but his duty consists merely of bringing the parties together so that, between themselves, they may negotiate a sale, and the sale is made in that manner, the broker is considered a mere "middleman" and is not necessarily the "agent" of either party. Where the relationship of principal and agent is shown, the principal is entitled to the best efforts and unbiased judgment of the agent. *Burleson v. Earnest*, 153 S.W.2d 869, 873–74 (Tex.Civ.App.—Amarillo 1941, writ ref'd). A broker is a special agent and has the same duty toward his employer as a special agent has toward his principal. *Barnsdall Oil Co. v. Willis*, 152 F.2d 824, 828 (5th Cir.1946), *motion for reh'g overruled*, 153 F.2d 784. A broker's contract of employment calls for the utmost good faith on the part of the broker and he is bound to disclose to his employer all material facts within his knowledge affecting any transaction. The broker may become liable to his principal for any negligent or other wrongful act done by

him where his principal suffers damage. *Barnsdall Oil Co.* at 828.

■ The letter agreements established the relationship of broker/customer and principal/agent. The letter from RPR dated June 1, 1990, told GSW that RPR would have to be the "exclusive agent" of GSW in this transaction and this offer was accepted by GSW. Appellant cites *In re Thomson McKinnon Securities, Inc.*, 143 B.R. 612 (S.D.N.Y.1992) as authority to show that RPR had no duty or liability and was acting as a "middleman". This case does not apply. The debtor in that case, Thomson McKinnon Securities, initiated a telephone call to Lincoln Savings, and described a loan package that another company, CES, had for sale. Thereafter, Lincoln and CES negotiated a sale. Lincoln had no contract with Thomson McKinnon concerning the transaction but only was informed by Thomson McKinnon of the package that CES had for sale. The loans went into default, were partially paid by insurance, and FDIC (receiver for insolvent Lincoln) sued Thomson McKinnon Securities in the bankruptcy court on the theory of fraudulent or negligent misrepresentations to buyer of the loan packages. The court found that Lincoln and the securities firm were not principal/agent and the securities firm did not owe Lincoln the high duty of a securities broker. The court found, in pertinent part:

> Simply because TMSI was also engaged in transactions with other parties unconnected with this case as a securities broker dealer does not mean that its mortgage loan transactions with Lincoln should carry the fiduciary responsibilities of a securities broker-dealer by virtue of its status as a nationally known securities broker.

The court found that no agency relationship existed and that the securities firm acted only as "matchmaker" by bringing the parties together to examine and negotiate a deal. *Id.* at 620. The court further found that under New Jersey law, Thomson McKinnon ("TMSI") made no fraudulent or negligent misrepresentations to Lincoln. *TMSI* does not apply to this case. We find that the trial court correctly found that RPR was the agent and broker of GSW and had a fiduciary relationship with GSW.

RPR agreed, in writing, to provide GSW with FHA *insured* Title I property improvement loans. The oral agreements further required that the loans be seasoned (existing loans, over six months old, with no defaults) and of grade "A" investment quality. The evidence shows that the eighteen loans received were not insured, not seasoned, and of poor quality. An expert witness, Gerald Treece, testified RPR breached its duty of reasonable investigation and proper delivery of all information prior to the table funding by Standard Pacific. The testimony of numerous witnesses proved that RPR knew of the condition of the loans and did not inform GSW. RPR also knew that Michael Castanon had a conflict of interest in that he had been an officer and founder of Standard Pacific and was working for them at the time he set up the deal. The evidence is sufficient to support the findings of the court that RPR was an agent/broker of GSW, had a duty to disclose material facts to GSW, the principal/customer, and that RPR knowingly breached that duty to disclose and that breach proximately caused GSW damages. The evidence is sufficient to support the trial court's findings that RPR breached its contract with GSW. We overrule points of error one, two, three, and four.

■ Appellant's points of error four-A and four-B claim that GSW waived, or is estopped from complaining of, RPR's breach of contract or breach of fiduciary duty. Appellant contends that by wiring the money to RPR, GSW waived its claim or is estopped from asserting it. Appellant cites no authority in its brief to support this contention. A party waives a point of error by failing to provide supporting argument or authorities. Tex.R.App.P. 74(f); *McPherson Enterprises, Inc. v. Producers Co–Op*, 827 S.W.2d 94, 96 (Tex.App.—Austin 1992, writ denied); Tex. R.App.P. 74(f). We overrule appellant's points of error four-A and four-B.

■ In points of error five, five-A, five-B, and five-C, appellant contends there is no evidence, or insufficient evidence, to support the damages awarded by the trial court. GSW introduced in evidence a chart, Exhibit

223, without objection by RPR, that summarized the eighteen loans and itemized the damages showing how much principal, interest, and expense was lost by GSW. Sue Millican testified and offered proof to show that the total loss to GSW was $328,572.02. Appellant argues generally that there is no evidence to support any of the damage awards by the court, but fails to show specifically any reasons why the evidence received by the trial court should not have been considered. Appellant cites no authority to support its general argument. Rule 74(f)(2), Texas Rules of Appellate Procedure, requires argument in an appellate brief to include "such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." The presentation, consisting only of a general argument without citation of any authority to maintain the point is not in minimal compliance with the briefing rules and, therefore, the point can be considered waived. *Benham v. Benham,* 726 S.W.2d 618, 621 (Tex.App.—Amarillo 1987, writ ref'd n.r.e.); *Estate of Blardone v. McConnico,* 604 S.W.2d 278, 283 (Tex.Civ. App.—Corpus Christi 1980) *writ ref'd n.r.e. per curiam,* 608 S.W.2d 618 (Tex.1980). Appellant's points of error five, five-A, five-B, and five-C are overruled.

In points of error five-D and five-E appellant asserts the court failed to offset the damages. RPR did not plead offset, nor offer any proof to support its claim of offset. The right to offset is an affirmative defense and the burden of pleading and proving the facts necessary to support offset are on the party making the assertion. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 936 (Tex.1980). Points of error five-D and five-E are overruled.

In appellant's point of error six appellant contends that GSW should have mitigated its damages by insuring the loans. RPR did not plead, nor offer proof of failure to obtain insurance as mitigation. Mitigation is an affirmative defense and the burden of pleading and proving facts showing it is on the appellant. Appellant also had the burden of proving the amount the damages were increased by the failure to mitigate, which it failed to meet. *P.G. Lake, Inc. v. J.M. Shef-*

*field,* 438 S.W.2d 952, 956 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.). We overrule point of error six.

In appellant's points of error seven and eight, appellant complains of the award of attorney fees. RPR pleaded only that attorney fees were not authorized under the Texas Declaratory Judgment Act. TEX. CIV.PRAC. & REM.CODE ANN. § 37.001, et seq. (Vernon 1986). GSW's pleadings include breach of contract, which was their main attack in this lawsuit. Attorney fees are recoverable in suits on a contract. TEX.CIV. PRAC. & REM.CODE ANN. § 38.001, et seq. (Vernon 1986). RPR did not plead or prove that amount of attorney fees awarded by the court was unreasonable. The unreasonableness of an award of attorney's fees is an affirmative defenses that must be pleaded and proved. *Dicker v. Lomas & Nettleton Financial Corp.,* 576 S.W.2d 672 (Tex.Civ. App.—Texarkana 1978, writ ref'd n.r.e.). We overrule appellant's points of error seven and eight.

Neither party complains of the take-nothing judgment in favor of appellee Windtree.

The judgment of the trial court is affirmed.