Alejandro **ROBLES**, Appellant,

v.

**CONSOLIDATED GRAPHICS, INC.,** Gulf Printing Company, Joe R. Davis, Mark Rand, and Steve Burgess, Appellees.

No. 14–96–00311–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 4, 1997.

Henry D. Drewinko, Houston, Robert Perry McConnell, Woodlands, for appellant.

J. Eugene Clements, Evelyn V. Keyes, Houston, for appellees.

Before MURPHY, C.J., and ANDERSON and HUDSON, JJ.

## OPINION ON MOTION
## FOR REHEARING

MURPHY, Justice.

This is an appeal from a summary judgment in a suit to collect commissions under a contract. Alejandro Robles ("Robles") sued Gulf Printing Co., its officers, employees, and parent company, (collectively referred to as "Gulf Printing")[1] for breach of contract and various torts based on Gulf Printing's alleged failure to pay commissions on a transaction brokered by Robles. In that transaction, Gulf Printing, a printing company located in Houston, contracted with Cooperativo de Communicationes Internacional S.A. de C.V. ("CCI"), a Mexico City based advertising agency, to print a "sports album project" for CCI's client, Coca–Cola ("the Coca–Cola project"). Claiming its separate contract to pay

---

1. Mark Rand is Gulf Printing's President. Joe Davis and Steve Burgess are either officers or employees of Gulf Printing. Consolidated Graphics, Inc. is Gulf Printing's parent company. The summary judgment at issue in this case also disposed of these parties.

Robles commissions was illegal and unenforceable because Robles failed to tell CCI he was representing both parties to the transaction, Gulf Printing moved for summary judgment on all of Robles's claims and counterclaimed for declaratory relief and tort damages. Concluding that Gulf Printing's contract with Robles was illegal and unenforceable, the trial court granted summary judgment in favor of Gulf Printing on all of Robles's claims.

Relying on the court's prior ruling, Gulf Printing then moved for summary judgment on some of its counterclaims. The trial court granted summary judgment for Gulf Printing. After Gulf Printing nonsuited its remaining counterclaims, the trial court entered a final judgment awarding Gulf Printing $165,000.00 in attorney's fees under the Declaratory Judgment Act and $135,924.01 in damages based on Gulf Printing's counterclaims for breach of fiduciary duty, constructive fraud, and unjust enrichment. Raising thirteen points of error, Robles appeals. We affirm.

## BACKGROUND

On September 15, 1993, Robles, doing business as Inform, U.S.A., contracted with CCI to find a suitable company in the United States to print the Coca–Cola project for CCI ("the CCI contract"). This contract is actually a letter from Robles to CCI's chairman of the board, Enrique Bernal Vasquez ("Bernal").[2] The CCI contract authorized Robles to: (1) "seek out and find companies with suitable capabilities for carrying out the project;" (2) "select companies that can meet the project requirements;" and (3) "select and formally present quotations with [contract] specifications and time frames." Once a printing contract was signed, the CCI contract further authorized Robles to: (1) "provide coordination between the two companies during the production and printing phases of the project;" (2) "supervise time frames and fulfillment of specifications stipulated in the contract;" (3) "track shipments" through customs; (4) "advise on transportation and cus-

toms matters; and (5) "track the project until the printing company has shipped the last lot" to the border. In return for his services, Robles was to be paid 15% of the total contract price, which according to the CCI contract, amounted to $98,839.40. This figure, which included five months of work already done by Robles on the project, was based on a previous contract proposal to Bernal. Robles was to receive $49,419.70 in advance and the remainder when the printing contract was signed.

Two weeks later, Robles contracted with Gulf Printing to "introduce" Gulf Printing to "certain prospective customers" in Mexico and "assist Gulf Printing in procuring and negotiating purchase orders or contracts from ... prospective customers ..." ("the Gulf Printing contract"). In consideration for Robles's services, Gulf Printing agreed during the three-year term of the contract to pay Robles a 10% commission for each purchase order or contract accepted by Gulf Printing from a prospective customer listed in the contract. The list of prospective customers included Bernal and several of CCI's clients or potential clients, but not CCI. Though the contract so provided, the parties never agreed in writing to expand the list. Payment of Robles's commission was due only when Gulf Printing received payment for its services. Robles told Gulf Printing about the CCI contract, stating that Bernal was going to pay him directly for developing the Coca–Cola project.

In January 1994, Gulf Printing contracted with CCI to print the Coca–Cola project. Robles participated in contract negotiations and performance on this project, carrying quotes back and forth between Gulf Printing and Bernal, arranging visits to Gulf Printing's plant facilities by Bernal and CCI's employees, and drawing up plans and specifications. Robles sought and received payment for his services from both Gulf Printing and CCI. In fact, Gulf Printing agreed to increase Robles's commission to 20% after Robles told them that Bernal had refused to pay him. Gulf Printing billed this 20% com-

---

**2.** Although the contract does not identify CCI by name, it is undisputed that Robles agreed to

work on the "sports album project" for CCI.

mission to CCI for the Coca–Cola project and paid Robles. Robles never told Bernal or anyone else at CCI about his receipt of commissions from Gulf Printing. In the meantime, CCI paid Robles $30,000.00 for his work on the Coca–Cola project. Invoices sent to CCI show a $30,000.00 payment by CCI to Robles in January 1994, and an outstanding balance of $68,839.35.

In February 1994, Bernal came to the United States to discuss Gulf Printing's work on the Coca–Cola project. During a conversation with Bernal, Gulf Printing's President, Mark Rand, mentioned Robles's commissions. This revelation infuriated Bernal. Thereafter, CCI refused to pay Gulf Printing under the printing contract so long as Robles received commissions. Because Gulf Printing was no longer being paid, it stopped paying commissions to Robles. By that time, Gulf Printing had paid $135,924.01 in commissions to Robles. CCI and Gulf Printing eventually resolved the matter and CCI resumed payments, which did not include Robles's commissions. During this time, Gulf Printing contracted with CCI to do printing for another CCI client, Marinela. Gulf Printing refused to pay Robles any commissions on the Marinela project or any further commissions on the Coca–Cola project. Thereafter, Robles filed this suit, seeking declaratory relief on his right to commissions and damages for breach of contract, fraud, tortious inference with business relations, conspiracy, extortion, duress and negligence.

## STANDARD OF REVIEW

Because this is a summary judgment case, we apply the well-established standard of review for summary judgments. A movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). In deciding whether there is a disputed material fact issue precluding summary judgment, proof favorable to the non-movant is taken as true and the court must indulge every reasonable inference and resolve any doubts in favor of the

non-movant. *Nixon* 690 S.W.2d at 548–49; *Montgomery,* 669 S.W.2d at 310. In other words, the issue on appeal is not whether the non-movant raised a material issue of fact precluding summary judgment; rather, the issue is whether the movant proved it was entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828–29 (Tex. 1970). If the appellate court finds the movant has not met its burden, it must reverse and remand the case for further proceedings. *Gibbs,* 450 S.W.2d at 828–29. To prevail on summary judgment, a defendant, as the movant, must establish as a matter of law all the elements of an affirmative defense or show that at least one element of plaintiff's cause of action has been established conclusively against the plaintiff. *Montgomery,* 669 S.W.2d at 310–11; *Gibbs,* 450 S.W.2d at 828.

In the order granting summary judgment in favor of Gulf Printing on all of Robles's claims, the court explicitly stated the grounds for its ruling. Some of these grounds independently support the trial court's judgment. Therefore, we need examine only those grounds that are necessary for final disposition of this appeal. *See Cincinnati Life Ins. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996) (holding that "courts of appeals should review all summary judgment grounds the trial court rules on and the movant preserves for appellate review *that are necessary for final disposition of the of the appeal...*") (emphasis added).

## ROBLES'S BREACH OF CONTRACT CLAIM

In point of error one, Robles contends the trial court erred in granting summary judgment for Gulf Printing on his contract claim because it was based on the "erroneous legal conclusion" that he was Gulf Printing's broker or agent. In granting summary judgment for Gulf Printing on Robles's contract claim, the court found Robles was Gulf Printing's broker or agent. Specifically, the court found there was no fact issue as to Robles's conduct in bringing the parties together, negotiating the terms of their relationship, and receiving a commission from both parties. The court concluded the Gulf Printing con-

tract was for undisclosed, double commissions on a brokered transaction and therefore, illegal and unenforceable as against public policy.

■ It is well-settled that a party cannot act in the capacity of agent for both parties to a transaction and receive commissions from both without their full knowledge and consent. *See e.g., Armstrong v. O'Brien,* 83 Tex. 635, 19 S.W. 268, 274 (1892); *Hughes v. Miracle Ford, Inc.,* 676 S.W.2d 642, 645 (Tex. App.—Dallas 1984, writ ref'd n.r.e.);[3] *Porter v. Striegler,* 533 S.W.2d 478, 479–80 (Tex.Civ. App.—Eastland 1976, no writ); *Phillips v. Campbell,* 480 S.W.2d 250, 253–54 (Tex.Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e); *Clark v. Price,* 112 S.W.2d 256, 257–58 (Tex.Civ.App.—Fort Worth 1937, writ dism'd); *B.F. Grounds & Sons v. Summers,* 95 S.W.2d 715, 716 (Tex.Civ.App.—Waco 1936, no writ). Recovery of commissions from both parties to such a transaction is prohibited by law as contrary to public policy. *Armstrong,* 19 S.W. at 274. Furthermore, "it makes no difference that the principal was not in fact injured, or that the agent intended no wrong or that the other party acted in good faith." *Id.*

The parties agree the question in this case is one of the existence of an agency relationship and is one of law based on the established facts. *See Ross v. Texas One Partnership,* 796 S.W.2d 206, 210 (Tex.App.—Dallas 1990), *writ denied per curiam,* 806 S.W.2d 222 (Tex.1991). Gulf Printing argues Robles was a broker and therefore, an agent for both CCI and Gulf Printing under the plain terms of his contracts with those parties. We agree.

■ An agent is one who consents to act on behalf of, and subject to, the control of the principal, who has manifested consent that the agent shall so act. *Hand v. Dean Witter*

*Reynolds, Inc.,* 889 S.W.2d 483, 493 (Tex. App.—Houston [14th Dist.] 1994, writ denied). A broker is one who is engaged by others on a commission basis and is recognized as an agent employed to make or negotiate bargains or contracts for others in matters of trade and commerce. *F.D.I.C. v. Golden Imports,* 859 S.W.2d 635, 643 (Tex. App.—Houston [1st Dist.] 1993, no writ) (automobile broker); *Williams v. Jennings,* 755 S.W.2d 874, 883 (Tex.App.—Houston [14th Dist.] 1988, writ denied) (real estate broker). Under the CCI contract, Robles was to be paid a fee not only to find and solicit a printing company for the Coca–Cola project, but also to coordinate production and shipping once such a company was found. Likewise, under the Gulf Printing contract, Robles was to be paid a commission not only to introduce Gulf Printing to specified prospective customers in Mexico, but also to assist Gulf Printing "in procuring and negotiating purchase orders or contracts from ... perspective customers." With respect to the Coca–Cola project, the uncontroverted summary judgment proof establishes that Robles performed these services for the respective parties and was paid accordingly. Clearly, Robles was hired by both CCI and Gulf Printing on a commission basis to make or negotiate bargains or contracts on their behalf in matters of trade and commerce. *See F.D.I.C.,* 859 S.W.2d at 643; *see also Williams,* 755 S.W.2d at 883. Accordingly, Robles was acting as an agent and broker for both Gulf Printing and CCI.

Robles argues there was no dual agency because there is no summary judgment proof Gulf Printing controlled the means and details of his assigned tasks and because the Gulf Printing contract specifically designates Robles an independent contractor and declares that Gulf Printing shall have "the sole right to negotiate and accept the terms and

---

**3.** *Hughes* speaks of an exception to disclosure and consent "where a broker exercises no judgment or discretion, but merely acts as a middleman to bring the parties together, or to execute a contract after it is agreed on, with no inconsistent duties...." 676 S.W.2d at 645; *see Rauscher Pierce Refsnes, Inc. v. Great Southwest Savings F.A.,* 923 S.W.2d 112, 115–16 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (recognizing distinction between a broker and mere middleman and holding that loan broker was not mere middleman, but was customer's agent, who breached contract and fiduciary duty to procure grade "A" investment quality loans; *but see West v. Touchstone,* 620 S.W.2d 687, 690 (Tex.Civ. App.—Dallas 1981, writ ref'd n.r.e.) (stating that "even though a broker may be middleman, he may nevertheless be an agent ..."). Because neither party addresses this issue on appeal, it is not before us. *See* Tex.R.App. P. 74(d), (f).

conditions of any purchase order or contract." *See O'Bryant v. Century 21 South Cent. States,* 899 S.W.2d 270, 271 (Tex. App.—Houston [14th Dist.] 1995, no writ) (holding that where franchise agreement designated franchisee an independent contractor, summary judgment proof did not show franchisor had right of control over franchisee's operations sufficient to impose vicarious liability based on agency relationship). First, the language in the Gulf Printing contract is not conclusive. *See Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 n. 3 (Tex.1993). Second, even if Robles was an independent contractor, it does not mean he could not also be an agent. Independent contractor and agency status are not, as Robles contends, mutually exclusive. Indeed, a party "who contracts to act on behalf of another and [is] subject to the other's control except with respect to his physical conduct" is an agent and also an independent contractor." RESTATEMENT (SECOND) AGENCY § 14N (1958). A broker such as Robles clearly falls within that category. *See id.* cmt. a.[4]

■ Here, the summary judgment proof establishes that Gulf Printing did not control how Robles physically performed his assigned tasks, but rather controlled who Robles could deal with, what contracts or purchase orders were acceptable, and when Robles would be paid. The fact Robles had no authority to bind Gulf Printing does not, as Robles contends, defeat his agency status. To the contrary, this fact supports an agency finding because it is proof of Gulf Printing's control over Robles. It is a general rule that an agent's authority is presumed to be co-existent with the business entrusted to his care. *See Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 837 (Tex.App.—Amarillo 1993, writ denied). In other words, the scope of an agency relationship is determined by the circumstances conferring the agency and need not specifically include the authority to bind the principal. *See, e.g., Williams,* 755 S.W.2d at 883 (holding that real estate broker hired to prospect for oil and gas leases was agent and not independent contractor where broker was given specific price to offer but could not change offer without principal's authority). Finally, although Gulf Printing reserved the "sole right" to negotiate contracts, the uncontroverted summary judgment proof shows that it was Robles, not Gulf Printing, who negotiated the Coca-Cola project on Gulf Printing's behalf. Robles took contract proposals from Gulf Printing to Bernal, drew up specifications for the project, and carried price quotes back and forth. Robles even brought Bernal to inspect Gulf Printing's plant. Based on the uncontroverted summary judgment proof, we hold the trial court correctly found Robles was acting as an agent and broker for both CCI and Gulf Printing.[5] Point of error one is overruled.

■ In point of error two, Robles contends fact issues exist regarding disclosure and consent. Specifically, Robles contends a fact issue exists as to whether he informed

---

4. Conversely, "a person who contracts to accomplish something or to deliver something to another, but who is not acting as fiduciary for the other is a non-agent contractor." RESTATEMENT (SECOND) AGENCY § 14N. at cmt. b. Because he was required to negotiate contracts and did so on Gulf Printing's behalf, Robles clearly was acting as an agent and a fiduciary. *Rauscher,* 923 S.W.2d at 115–16; *West,* 620 S.W.2d at 690 ("the relationship between an agent and principal is a fiduciary one"). For the same reason, Robles was also not a finder. *See Rogers v. Ellsworth,* 501 S.W.2d 756, 757 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.) ("a finder is an intermediary who contracts to find and bring parties together, but leaves the ultimate transaction to the principals; he is the procuring cause, and his function ceases when negotiations between the principals begin").

5. As we described, Gulf Printing moved for summary judgment on its counterclaims based on the trial court's prior summary judgment ruling that Robles illegally received double commissions as a broker or agent for both Gulf Printing and CCI. However, Robles attempted to relitigate this issue in response to Gulf Printing's motion for summary judgment on its counterclaims. This was improper. The issues determined on a motion for summary judgment are final, although the judgment is interlocutory. *See Martin v. First Republic Bank,* 799 S.W.2d 482, 488–89 (Tex. App.—Fort Worth 1990, writ denied). Because the court had already decided the issue of illegal double commissions in the first summary judgment dealing with Robles's claims, that issue was not before the court in the second summary judgment and the trial court properly refused to consider it. *See id.*

Gulf Printing of the CCI contract. The trial court found there was uncontroverted summary judgment proof that Robles: (1) did not to disclose to Gulf Printing or Bernal that he was to receive commissions from both parties; and (2) did not obtain the consent of both parties for such double commissions. The court therefore concluded the Gulf Printing contract was contrary to public policy and unenforceable.

While Robles claims, and the summary judgment proof shows, he informed Gulf Printing of the CCI contract, he makes no such claim or showing with respect to disclosure of the Gulf Printing contract to CCI. Indeed, the uncontroverted summary judgment proof is that Robles did not inform Bernal or CCI of the Gulf Printing contract. In his deposition, Robles repeatedly acknowledged that he did not inform Bernal of the commissions received under the Gulf Printing contract. In his answers to interrogatories, Robles all but concedes CCI and Bernal learned of the Gulf Printing contract from Gulf Printing's President, Mark Rand, not him. Robles refers to the "disclosure of the contract by Mark Rand" and states "the relations with CCI/Enrique Bernal were very tense" afterwards. Rand's deposition testimony confirms Bernal "blew his stack" when he mentioned the Gulf Printing contract.

Because the uncontroverted summary judgment proof establishes Robles failed to disclose his double commissions to Bernal and failed to obtain the consent of *both* Gulf Printing and CCI for such commissions, the trial court properly concluded the Gulf Printing contract was illegal and unenforceable. *See Armstrong*, 19 S.W. at 274. Accordingly, the trial court appropriately granted summary judgment in favor of Gulf Printing on Robles's breach of contract claim. Point of error two is overruled.

6. Contrary to Robles's contention, the trial court's ruling does not violate the procedural rule allowing parties to plead alternative theories of recovery. *See* Tex.R. Civ. P. 48. Rule 48 simply does not affect the merits of the alternative theories pled.

7. Because Robles's eighth amended petition was filed after the trial court granted summary judgment for Gulf Printing on all Robles's claims, it will not be considered on appeal. *See Marshall v. Sackett*, 907 S.W.2d 925, 929 (Tex.App.—Hous-

## ROBLES'S FRAUD, CONSPIRACY AND NEGLIGENCE CLAIMS

 In point of error three, Robles contends the trial court erred in granting summary judgment on his fraud, conspiracy, and negligence claims because these claims did not depend on the existence of an enforceable contract. In granting summary judgment in favor of Gulf Printing on these claims, the court found Robles pled the terms of the Gulf Printing contract to recover for fraud, fraudulent inducement, civil conspiracy, and negligence. The court also found the duties claimed to have been breached arose out of that contract. The court then concluded Robles was not entitled to submit a contract claim as one of these torts.[6] In other words, the court concluded Robles's tort claims (other than tortious interference) sounded in contract because he pled the terms of the Gulf Printing contract as a basis for his claims, and the duties claimed to have been breached arose out of that contract.

 In deciding whether plaintiff may recover in tort, contract or both, the court must determine whether: (1) the claim is for breach of a duty created solely by contract rather than a duty imposed by law; and (2) the injury is only the economic loss to the subject of the contract itself. *Southwestern Bell. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex.1991); *Jim Walter Homes v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). Ordinarily, we must look to the substance of the cause of action and not necessarily the manner in which it was pleaded. *Jim Walter Homes*, 711 S.W.2d at 618. In the instant case, however, Robles relies primarily on the allegations in his seventh amended petition to support his argument that he is entitled to pursue his tort claims.[7] In that regard, Ro-

ton [1st Dist.] 1995, no writ). Furthermore, we note that Gulf Printing specially excepted to Robles's seventh amended petition and two earlier petitions filed by Robles. The court sustained the first set of special exceptions and Robles repled before the court could rule on the second set. In its summary judgment order, the court sustained the third set, but instead of dismissing the case, granted summary judgment. Because Robles had opportunities to amend his pleadings, summary judgment based on Robles's failure to

bles alleges Gulf Printing fraudulently induced him into making the Gulf Printing contract because it never intended to honor its obligation to pay commissions under the contract, but intended to deal directly with prospective clients.[8] Robles also alleges Gulf Printing committed fraud by denying it was doing business with a prospective customer when in fact it was doing business with a company (CCI) owned by a prospective customer (Bernal). Robles further alleges Gulf Printing and Bernal conspired to ensure that he would not receive commissions under the Gulf Printing contract. Finally, Robles alleges Gulf Printing was negligent in telling Bernal about the Gulf Printing contract.

■ The substance of each of these allegations is that Gulf Printing failed to pay Robles's commissions; a duty created solely by contract. Although Robles contends the duty not to disclose this information arose from Gulf Printing's "cooperative business position in Mexico" with him, and "knowledge of the details of his agreement in the United States," he cites no authority to support this contention. A general argument made without discussion of the facts and unsupported by citation to authority is waived. *Rauscher*, 923 S.W.2d at 112 (citing TEX.R.APP. P. 74(f)(2)). In any event, Robles's contention is patently without merit.

■ Whether a duty exists under a set of facts is a question of law. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994). Under long-established case law, the duty to disclose in this case, if any, was an affirmative one, which required Gulf Printing to disclose its relationship with Robles. *See Armstrong*, 19 S.W. at 274. Clearly, Gulf Printing was not negligent as a matter of law in telling Bernal about its contract with Robles and Robles

could not claim damages for loss of business opportunities as a result. Therefore, the only injury suffered by Robles was the loss of commissions; an economic injury that is the subject of the Gulf Printing contract. Thus, the court properly concluded Robles could not bring such a claim as one for fraud, conspiracy, or negligence.[9] Point of error three is overruled. Having determined Robles could not bring his contract claim as a claim for fraud, conspiracy, or negligence, we need not address points of error four through seven asserting the existence of fact issues with respect to these claims.

## ROBLES'S TORTIOUS INTERFERENCE CLAIM

■ In points of error eight and nine, Robles contends the trial court erred in granting summary judgment on his claim for tortious interference with prospective business relationships because: (1) there was no ruling on the validity of the CCI contract; and (2) truth is not a defense. In point of error ten, Robles contends material fact issues exist concerning his prospective business relationships and damages.[10] The court granted summary judgment on this claim on three grounds: (1) the disclosure of truthful information could not constitute improper interference with business relations, (2) Robles failed to raise a fact issue regarding the probability of a prospective relationship with Bernal or any other party; and (3) Robles's damages were speculative.

■ Initially, Robles argues the trial court erroneously considered the Gulf Printing contract instead of the CCI contract as the object of the tortious interference. Ro-

---

state a claim is proper. *See Texas Dept. of Corrections v. Herring*, 513 S.W.2d 6, 9–10 (Tex. 1974).

**8.** While there is an independent duty not to make misrepresentations or certain disclosures during the contract formation stage, Robles does not assert that Gulf Printing actually made any misrepresentations during contract negotiations. *See Howell Crude Oil Co. v. Donna Refinery Partners, Ltd.*, 928 S.W.2d 100, 109 (Tex.App.—Houston [14th Dist.] 1996, writ denied).

**9.** Although the trial court ruled Gulf Printing was entitled to summary judgment "on all claims raised in [its] motion," Robles does not complain about the court's ruling with respect to his extortion and duress claims, which were addressed in Gulf Printing's summary judgment motion. Therefore, Robles waived any error with respect to these claims. TEX.R.APP. P. 74(d).

**10.** Because Robles does not complain about the trial court's ruling on his claim of tortious interference with a *contract*, that complaint is waived. *See* TEX.R.APP. P. 74(d).

bles bases his argument on the trial court's finding that there could not be interference with a *contract* that was illegal and contrary to public policy. This finding, however, relates only to the claim of tortious interference with a *contract;* a finding not contested by Robles on appeal. Even if Robles had contested this finding, he could not succeed on his tortious interference claim. A contract that is illegal and contrary to public policy cannot be interfered with. *See Juliette Fowler Homes, Inc. v. Welch Associates, Inc.,* 793 S.W.2d 660, 664–65 (Tex.1990) (contact that was unenforceable on grounds that noncompetition clause was unreasonable restraint on trade and contrary to public policy held a valid defense to tortious interference claim). Here, the trial court implicitly found the CCI contract was illegal and unenforceable as against public policy when it found Robles was charging double commissions as an agent for both CCI and Gulf Printing. Therefore, the CCI contract could not have been interfered with. *See id.*

 To recover on a cause of action for tortious interference with a prospective business relationship, the plaintiff must show: (1) there was a reasonable probability that he would have entered into a business relationship; (2) the defendant acted maliciously by intentionally preventing the relationship from occurring with the purpose of harming the plaintiff; (3) the defendant was not privileged or justified in his actions; and (4) actual harm or damage occurred to the plaintiff as a result. *American Medical Int'l Inc. v. Giurintano,* 821 S.W.2d 331, 337 (Tex. App.—Houston [14th Dist.] 1991, no writ).[11] Here, the trial court found Gulf Printing's alleged interference was justified. Section 772 of the Restatement (Second) of Torts states:

> One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation by giving the third person

(a) truthful information, or

(b) honest advice within the scope of a request for advice.

RESTATEMENT (SECOND) OF TORTS § 772 (1979).

As we stated, Gulf Printing's duty, if any, was to disclose its relationship with Robles to Bernal. Even if it had no such duty, there is nothing in the law or in the Gulf Printing contract itself that prohibited Gulf Printing from disclosing this truthful, non-confidential information. Thus, by doing so, Gulf Printing did not tortiously interfere with Robles's alleged prospective business relations. *See Tarleton State Univ. v. Rosiere,* 867 S.W.2d 948, 953 (Tex.App.—Eastland 1993, writ dism'd by agr.) (adopting section 772 and holding that university vice-president's disclosure of truthful information to university president did not tortiously interfere with professor's prospective business relationship with university); *see also* RESTATEMENT (SECOND) OF TORTS § 774 (1979). Points of error eight and nine are overruled. Because we find Gulf Printing's conduct was justified, we need not address point of error ten complaining of the trial court's failure to find fact issues concerning the existence of prospective business relationships and damages.

## GULF PRINTING'S COUNTERCLAIMS

In points of error eleven through thirteen, Robles contends the trial court erred in granting summary judgment on Gulf Printing's counterclaims for declaratory relief, breach of fiduciary duty, constructive fraud and unjust enrichment because: (1) the Gulf Printing contract was not illegal; and (2) he was not Gulf Printing's agent or broker and therefore did not improperly conceal information from Gulf Printing. In other words, Robles's sole complaint is that Gulf Printing was not entitled to summary judgment on its counterclaims because the prior summary judgment in favor of Gulf Printing on Robles's claims was improper.[12]

---

11. Although *Giurintano* denotes privilege or justification as elements of the plaintiff's claim, they are actually affirmative defenses. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 689–90 (Tex. 1989).

12. Robles acknowledges he did not contest the propriety of the declaratory judgment counterclaim in the trial court and therefore concedes this issue on appeal. *See* TEX.R.APP. P. 74(d). Robles also does not contest the amount of dam-

Having determined Gulf Printing was entitled to summary judgment on all of Robles's claims, we hold Gulf Printing was also entitled to summary judgment on its counterclaims. Points of error eleven through thirteen are overruled and the judgment of the trial court is affirmed.

ages and attorney's fees awarded to Gulf Printing. Therefore, these issues are also not before us. *Id.*